49474. LOWE v. AMERICAN MACHINE & FOUNDRY COMPANY et al.

Stolz, Judge.

On September 16, 1961, the plaintiff cut off his large

toe while mowing a steep, wet lawn in his stocking feet. On September 13, 1963, the plaintiff filed suit in the Superior Court of Fulton County, Georgia, against American Machine & Foundry Company (AMF), Sears, Roebuck & Company (Sears) and Kollwood, Inc. (Kollwood). Kollwood was dismissed as a party defendant in the Georgia suit, by the plaintiff voluntarily, on September 21, 1973. The plaintiff's complaint alleged in part that the lawnmower was manufactured by Kollwood or its corporate predecessors; that Kollwood was subsequently acquired by AMF; and that the lawnmower was sold at retail by Sears. (Hereinafter, defendants may be collectively referred to as "Georgia defendants.") The basis of the Georgia suit was that the lawnmower was improperly and negligently designed and manufactured. Likewise, on September 13, 1963, the plaintiff filed suit in the United States District Court for the Southern District of Iowa, Central Division (hereinafter "Iowa suit"), against the Taylor Steel Products Company, a corporation (Taylor), The New Monarch Machine & Stamping Company, a corporation (New Monarch), and Kollwood, Inc. (Kollwood), alleging that *one or all* of those defendants was the manufacturer of the lawnmower in question. (These defendants will be referred to hereinafter, collectively, as "Iowa defendants.") The basis of the Iowa suit was that the negligent and improper design and manufacture of the lawnmower had caused the plaintiff's injuries. In order fully to understand the two cases, a brief history of the various corporations involved may be helpful. The ownership of all capital stock in Taylor and New Monarch was acquired by Western Tool, on or before January, 1957. Both Taylor and New Monarch continued their corporate existence until dissolution on January 25, 1962. Western Tool did business under that name until July 29, 1963, on which date it changed its name to Kollwood, Inc. Prior thereto, in 1963, AMF acquired all the shares of stock in Western Tool and assumed all liabilities of that company. Kollwood continued in existence until July, 1963, when it filed notice of intention to dissolve. Thus, on September 13, 1963, the date of the filing of both of the plaintiff's

suits, AMF was the corporate successor of Taylor and New Monarch, had assumed the liabilities of Kollwood, and had changed its name from Western Tool to AMF.

Prior to the trial of the Iowa case, the following stipulation was entered into in the presence of the court: "Mr. Crouch: I would like to have it made this way, that the defendant Kollwood, formerly Western Tool and Stamping Company, assumes any negligence, if any, and any responsibility, if any, in the manufacturing or assembling of the lawnmower known as 'Taylor,' and under it the words 'Taylor Steel Products Company,' the assumption being predicated upon proof that there is some evidence of negligence and some negligence in the design; some negligence in the manufacture or assembly of the lawnmower. But whatever there is proof of, if any, Kollwood, formerly Western Tool, assumes full responsibility. The Court: I think that takes care of it then, Mr. Lowe. Mr. Lowe: Yes, sir. I might request, since Kollwood within the last four months exchanged share for share its stock or Western Tool — and with American Machine and Foundry — and I do not have that contract, but the secretary of all three of those companies states in discovery deposition yesterday afternoon that it was stated in the contract that American Machine and Foundry assumed the liabilities of Kollwood. I would like a clarification on that point in the absence of being permitted to get a copy of that contract. That's one of the things that I asked for, too. Now he stated that American Machine assumed the liabilities of Kollwood and Western Tool, and now he says that Kollwood assumed them of New Monarch. Is there any transferring of liability to American Machine or does it reside with Kollwood, according to his stipulation? The Court: Kollwood has assumed the liability here, if any, if any exists. Is that correct? Mr. Crouch: That is right. And, your Honor, while this matter may not be brought before a jury to try this fact, Kollwood, formerly Western Tool & Stamping Company and New Monarch Machine & Stamping Company, had in force and effect a products liability policy that covered their liability, if any, for the manufacturing of power lawnmowers. And it is under this coverage that any judgment that this plaintiff would

obtain would be paid. I have so informed Mr. Lowe prior to this date and I make this statement now in open court. While it isn't a matter that may be submitted to the jury, the fact that there is liability insurance, with reference to looking for an asset from which to collect his judgment, I make this statement professionally and binding my clients; that there is an asset that covers the product liability of these corporations. Mr. Lowe: May I ask if he will add in the word 'liability' in addition to saying responsibility and liability in his stipulation? There may be some slight difference between the two words. Mr. Crouch: And I'll say the word liability, if any."

Thereafter the stipulation was made a part of the pre-trial order and the Iowa case proceeded to trial. At the conclusion of the trial, the Iowa jury was given the following special written interrogatories and made the following answers: "1. Were the defendants negligent in any of the following respects: (a) In failing to warn users of the rotary power mower of the dangers involved in its use, and in failing to warn of the dangers of getting feet under said mower? No. (b) In designing, manufacturing, assembling and selling for general public usage, a rotary power mower not equipped with safety devices in the form of handle up-stops? No. (c) In designing, manufacturing, assembling and selling for general public usage, a rotary power mower not equipped with safety devices in the form of guards around the cutting blade? No. (d) In designing, manufacturing, assembling and selling for general public usage, a rotary power mower constructed so that the minimum horizontal level of the cutting blade was not even with or higher than the lower edge of the housing? No. 2. Was the negligence, if any, of the defendants the proximate cause of the accident in which the plaintiff suffered injuries? No. 3. Was there a new and intervening cause which broke the chain of causation between the original negligence, if any, of the defendants and the injury sustained by the plaintiff? No. 4. Could the plaintiff, by the exercise of ordinary care, have avoided the accident in which he received injuries for which he is seeking recovery? Yes. 5. Did the negligence, if any, of the plaintiff contribute to the accident wherein he received the injuries for which he is

seeking recovery? Yes." The jury then returned a general verdict in favor of the defendants. The judgment of the Iowa District Court was subsequently affirmed (Lowe v. Taylor Steel Products, 373 F2d 65 (6th Cir. 1967)) and certiorari was denied by the United States Supreme Court (Lowe v. Taylor Steel Products, 389 U. S. 858 (88 SC 85, 19 LE2d 122)).

In the Georgia suit, allegations were contained relating to the ownership of Taylor, New Monarch, Western Tool and Kollwood which were substantially the same as those made in the Iowa suit. In addition, the Georgia suit alleged that AMF was the successor corporation to Western Tool and that Sears was the retail seller of the lawnmower in question. The defendants filed pleas of res judicata asserting as a bar the Iowa judgment. The pleas, treated as motions for summary judgment, were sustained by the Fulton Superior Court, and the plaintiff's complaint was dismissed. It is from this judgment that the plaintiff appeals.

1. Motions for summary judgment are authorized if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Code Ann. § 81A-156 (c) (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238).

With this premise in mind, let us look at the posture of the Georgia suit as it relates to each of the defendants. (a) Sears is sued as the retail seller of the lawnmower in question. "It is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury." *King Hardware Co. v. Ennis,* 39 Ga. App.

355, 360 (147 SE 119); *Ellis v. Rich's, Inc.,* 132 Ga. App. 430. The trial court correctly sustained the motions for summary judgment as to defendant Sears. (b) AMF: As previously noted, AMF is the successor corporation of Taylor, New Monarch and Western Tool. It had assumed the liabilities of Kollwood. Taylor, New Monarch, and Kollwood were parties defendant in the Iowa suit. The issues presented (negligent and improper design and manufacture of a lawnmower versus the plaintiff's failure to exercise ordinary care for his own safety) in that case and the case here are identical, applying the criteria initially developed by Justice Roger Traynor in Bernhard v. Bank of America Nat. Trust &c. Assn., 19 Cal. 2d 807 (122 P2d 892): (1) Was the *issue* decided in the prior adjudication (Iowa case) identical with the one presented in the suit in question (Georgia case)? (2) Was there a final judgment on the merits? (3) Was the party *against whom* the plea is asserted, a party or in privity with a party to the prior (Iowa) adjudication? The answer to all three questions is in the affirmative and thus the plea is sustained. Moreover, under our statute: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." Code § 110-501. AMF, as the successor corporation of Taylor and New Monarch and having assumed the liabilities of Kollwood, stands in privity with these corporations and is afforded the protection of the statutory bar. *Roadway Express, Inc. v. McBroom,* 61 Ga. App. 223 (6 SE2d 460). See Code Ann. § 22-1007 (5) (Ga. L. 1968, pp. 565, 675) and *former* Code Ann. § 22-1844 (Ga. L. 1937-38, Ex. Sess., pp. 214, 232), which provide for the assumption of liability by statute.

The plaintiff has had his day in court. The issues were fully and fairly tried by the Iowa court. The parties to both cases stand in privity with each other. The judgment of the Iowa court is entitled to full faith and credit. The superior court correctly sustained AMF's plea of res judicata (motion for summary judgment) and its judgment is affirmed.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*

ARGUED JUNE 26, 1974 — DECIDED SEPTEMBER 6, 1974.

*Wyman C. Lowe,* for appellant.
*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Robert W. Beynart,* for appellees.