### 53207. PIERCE v. LIBERTY FURNITURE COMPANY, INC. et al.

STOLZ, Judge.

The appellant bought a porch swing kit from appellee Liberty Furniture Company and assembled the set on her porch. Liberty had purchased the kit in a sealed package, complete with oak chair and hardware from appellee Gore and Easterling Chair Company. The hardware was not constructed by Gore, but was bought by Gore from another company in a closed, plastic container for insertion in the swing kit. On the day of purchase, the appellant attempted to sit on her swing, which collapsed and injured her due to the breaking of one of the hardware pieces. The appellant originally sued both Liberty and Gore under the provisions of Code Ann. § 105-106 (Ga. L. 1968, pp. 1166, 1167) and for negligence. She subsequently amended her complaint to include counts of fraud and breach of warranty by Liberty. Motions for summary judgment made by both appellees were granted. We reverse both grants of summary judgment.

1. Although we must reverse the grant of summary judgment below in favor of appellee Liberty, several of the grounds upon which the plaintiff-appellant based her case were properly dismissed.

Because there is absolutely no evidence that Liberty manufactured the swing, Liberty would not be strictly liable to the appellant under the provisions of Code Ann. § 105-106, supra. *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373) (1975).

2. Nor, under the affidavits presented for summary judgment, is appellee Liberty liable for negligently permitting defective equipment to be sold to the appellant, as alleged in her complaint. "It is the general rule that a vendor or dealer who is not the manufacturer is

under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury." *King Hardware Co. v. Ennis,* 39 Ga. App. 355, 360 (147 SE 119) (1928); see *Lowe v. American Machine &c. Co.,* 132 Ga. App. 572 (1) (a) (208 SE2d 585) (1974).

3. However, the appellant has stated sufficient grounds for a finding that appellee Liberty is liable for a breach of warranty. There is evidence of a defect in the swing which rendered it unfit for the ordinary purposes for which such goods are used. Thus Liberty may be held liable under the Uniform Commercial Code's implied warranty of merchantability. Code Ann. § 109A-2—314 (Ga. L. 1962, pp. 156, 189).

All of the post-U.C.C. authority that we have studied indicates that the implied warranty of merchantability does not base any distinctions upon whether or not goods are sold in their original packages. See, e.g., Anderson, 1 Uniform Commercial Code §§ 2-314: 70-72 (2d Ed. 1970); Kock, Georgia Commercial Practice, 40-41 (1964); White, Sales Warranties Under Georgia's Uniform Commercial Code, 1 Ga. S. B. J., 191, 196 (1964). The provision, in fact, establishes a concept for retailers similar to that employed in Code Ann. § 105-106, supra, by which manufacturers may be held strictly liable for defective products.

Prior to the enactment of the U.C.C., Georgia adhered to the "sealed container doctrine." See *Wood v. Hub Motor Co.,* 110 Ga. App. 101 (2) (137 SE2d 674) (1964); *Maroney v. Montgomery Ward & Co.,* 72 Ga. App. 485 (34 SE2d 302) (1945); *Bel v. Adler,* 63 Ga. App. 473 (2) (11 SE2d 495) (1940). According to that doctrine, no warranty of merchantability applied as to the retailer of

goods in their original packages, manufactured by reputable manufacturers, and in general use in the retail trade. In *Wood v. Hub Motor Co.,* supra, however, it was specifically noted that this line of decisions was based on Code § 96-301, which was repealed with the advent of the U.C.C. in Georgia.

Since the adoption of the U.C.C., several Georgia cases have applied the implied warranty of merchantability to retailers of goods sold in sealed packages. In *Fender v. Colonial Stores, Inc.,* 138 Ga. App. 31 (1) (A) (225 SE2d 691) (1976), the plaintiff took a six-pack carton of Coca-Cola from a shelf in the supermarket. She then proceeded to the check-out counter, and placed the carton upon the counter, at which time a bottle exploded and injured her. She sued the supermarket and suffered a directed verdict. This court held, on p. 35, "that Coca-Cola bottles which would break under normal handling are not fit for the ordinary use for which they were intended . . ." and thus there was a prima facie showing by the plaintiff of a claim under the U.C.C.'s implied warranty of merchantability. The case was remanded for a jury trial.

*Chaffin v. Atlanta Coca Cola Bottling Co.,* 127 Ga. App. 619 (1) (194 SE2d 513) (1972), also deals with a bottled soft drink which was not merchantable. In this case the plaintiff's daughter purchased a Coke from a vending machine at a Big Apple grocery store. The plaintiff was injured while drinking an impure substance which was contained in the bottle. The plaintiff sued the grocery store on several grounds, including that of breach of the U.C.C. implied warranty of merchantability. The judge refused to charge the jury as to the implied warranty, and the jury found against the plaintiff. This court held that the trial court erred in its refusal to charge.

Numerous other cases from this court, while not dealing specifically with goods sold in original containers, have used a strict liability approach to hold retailers liable for damage, suffered due to a breach of the U.C.C. implied warranty of merchantability. *Redfern Meats v. Hertz,* 134 Ga. App. 381 (215 SE2d 10) (1975) (improperly operating truck); *Ray v. Deas,* 112 Ga. App. 191 (144 SE2d

468) (1965) (foreign substance in hamburger).

*Ellis v. Rich's, Inc.*, 233 Ga. 573, supra, would appear at first glance to hold that the sealed-container doctrine still applies. In *Ellis,* the buyer purchased a fondue pot from Rich's and gave it as a Christmas gift to Mrs. Ellis. When the pot broke, injuring Mrs. Ellis, she sued Rich's, claiming a breach of the implied warranty of merchantability. The Supreme Court held summarily that she had no claim for breach of warranty under the U.C.C. because of lack of privity — she was a donee. 233 Ga., p. 576. The U.C.C. is explicit in its requirement that privity exist if a party is to claim the benefits of an implied warranty. Code Ann. § 109A-2—318 (Ga. L. 1962, pp. 156, 191). Therefore, the result in *Ellis* is not applicable to a fact pattern where the injured party purchased the goods personally.

It should be noted that under this holding a retailer is not a defenseless party who will be caught with a monetary loss due to another's faulty construction of products. The retailer's remedy is an action over against his seller — not exculpation. The retailer may rely on the wholesaler or manufacturer to supply merchantable goods, and if they are not merchantable, the retailer has the same claim for breach of warranty as its customer had against it. Kock, Georgia Commercial Practice, 41 (1964).

For the reasons given in this division of our opinion, we reverse the grant of summary judgment as to appellee Liberty.

4. We also find it necessary to reverse the grant of summary judgment in favor of appellee Gore. Code Ann. § 105-106, supra, imposes strict liability in tort upon the manufacturer of personal property. In this case we are faced with the issue of whether or not Gore is a "manufacturer."

The party resisting a motion for summary judgment is given the benefit of all inferences that may be drawn from the evidence. *Ford Motor Credit Co. v. Moulder,* 132 Ga. App. 867 (209 SE2d 685) (1974). Thus construing the evidence in the case sub judice, we find that one could infer that Gore sold the defective hardware as a part of a kit under its own name and trademark. Gore did not act as a mere distributor selling products acknowledged to have

been constructed by others.

It is an issue of first impression in this state as to whether one who assembles component parts and sells them as a single product under its trade name is a manufacturer of the entire product into which the parts are integrated. Numerous other states have held the assembler to be a manufacturer. See, e.g., Bradford v. Bendix-Westinghouse Automotive Air Brake Co., 517 P2d 406 (13) (Colo. App. 1973); Holman v. Ford Motor Co., 239 S2d 40 (1) (Fla. App. 1970); Vandermark v. Ford Motor Co., 61 Cal.2d 256 (391 P2d 168) (1964). In addition, the second Restatement of the Law of Torts § 400 states, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." See Moody v. Sears, Roebuck & Co., 324 FSupp. 844 (S.D. Ga. 1971). Based on this precedent and the fact that one selling a product under its trade name causes the chattel to be used in reliance upon its care in making the item, we hold that an entity which assembles component parts and sells them as a single product under its trade name is a "manufacturer" within the meaning of Code Ann. § 105-106, supra.

*Judgment reversed. Quillian, P. J., and Shulman, J., concur.*

SUBMITTED JANUARY 11, 1977 — DECIDED FEBRUARY 2, 1977.

*Calhoun & Donaldson, John R. Calhoun,* for appellant.

*Bouhan, Williams & Levy, James M. Thomas, Falligant, Karsman, Kent & Toporek, Stanley Karsman, Timothy F. Callaway, III,* for appellees.