## A93A0153. REAM TOOL COMPANY v. NEWTON.
## A93A0154. FREEBORN TOOL COMPANY, INC. v. NEWTON.
## A93A0155. DELTA INTERNATIONAL MACHINERY CORPORATION v. NEWTON.
### (433 SE2d 67)

BIRDSONG, Presiding Judge.

This is an appeal of the order of the superior court denying appellants' motion for summary judgment to Ream Tool Company (RTC), Freeborn Tool Company (FTC), and Delta International Machinery Corporation (DIM) against appellee/plaintiff Karla R. Newton.

Appellee Newton purchased a DIM wood shaper from Stone Mountain Power Tool Corporation (SMPT) for her work shop; the shaper had a spindle guard; appellee knew this particular shaper did not come with cutters. Previously, Newton had worked for about six months at a millwork shop. Although she had never used a DIM wood shaper or a shaper with a similar guard or fences, she had worked with wood shapers at the millwork shop.

The DIM shaper guard had a four-and-one-half inch outer diameter, and was designed to be affixed on the spindle above the cutter. The instruction manual supplied by DIM with the shaper states in bold print: **"CAUTION: The diameter of the spindle guard should be at least 1″ (one inch) more than the maximum cutting circle of the shaper cutter and the height of the guard should not exceed ¼″ (one quarter inch) above the material."** Appellee maintains she did not read the portions of the manual containing this warning.

Appellee did not buy cutters from SMPT, as the DIM shaper was not sold with the specialized cutters she desired. Rather, she subsequently ordered two special cutters from RTC (a mail order cutter supplier), one of these was a "Colonial" cut with a spindle hole of a certain diameter. RTC in turn ordered the cutters from FTC. FTC manufactured an approximate six-inch Colonial cutter (with a so-called "open throat" design) to meet the spindle hole requirements of appellee's order with RTC; apparently, at no time was FTC requested to produce a cutter having a specified outer diameter. The cutters were sold by FTC to RTC who sold them to appellee. RTC did not make any suggestions as to the size, style, or design of the cutters appellee needed; RTC merely passed the ordering information and sample wood cuts received from appellee to FTC. Appellee subse-

quently installed the Colonial cutter on the DIM shaper, and placed the four-and-one-half inch spindle guard on top of the cutter, resulting in the bright yellow blades of the cutter extending about one-and-one-half inches beyond the protective range of the orange spindle guard, contrary to the warning contained in the DIM instruction manual. As appellee was operating the shaper with the Colonial cutter, the cutter snatched the wood in a "kickback" action and appellee's hand was pulled suddenly into the cutter.

Appellee brought a products liability suit averring various grounds of strict liability, negligent manufacturer, and breach of warranty against appellants DIM, RTC, FTC and SMPT. Appellants moved for summary judgment, relying upon the "open and obvious" rule. See generally *Weatherby v. Honda Motor Co.*, 195 Ga. App. 169 (393 SE2d 64). The trial court denied appellants/defendants' motion for summary judgment. *Held*:

1. At summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-movant's case. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474). A movant/defendant for summary judgment may discharge his burden by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the non-moving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, supra at 491.

2. In her deposition, appellee affirmatively and unconditionally answered that she considered herself as having become an experienced shaper operator from working at the millworks. Subsequently and without explanation, appellee offered evidence at least implying she was not an experienced shaper operator; appellee's counsel also argues in a supplemental appellate brief that "Ms. Newton was simply not an experienced shaper operator." As to any unexplained contradiction in appellee's testimony, *Prophecy Corp. v. Charles Rossignol*, 256 Ga. 27 (343 SE2d 680) applies.

3. (a) At best only a shadowy semblance of an issue exists (see *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515)) that RTC was the manufacturer of the cutter. RTC merely acted as a "middleman" in procuring the cutters from FTC and selling them to appellee. A cause of action for strict liability can be maintained only against the manufacturer of a product. OCGA § 51-1-11.1. A mere "product seller" is not a manufacturer, and is not liable as a manufacturer on grounds of strict liability. OCGA § 51-1-11.1.

(b) Further, as no genuine issue of material fact exists whether RTC manufactured or designed the cutter, only a shadowy semblance, if any, of an issue of RTC's liability on grounds of negligent manufac-

ture or design remains. *Peterson,* supra.

(c) Nor does a genuine issue of material fact exist that RTC negligently sold a defective cutter to appellee. The unrefuted evidence of record establishes that RTC was not aware, either before or when it sold appellee the cutter that the "open neck" or "open throat" design of the cutter might produce a greater likelihood of "kickback" when operated in conjunction with a shaper, or that it would produce a greater likelihood of "kickback" as opposed to a "closed throat" designed cutter. Not being a manufacturer, RTC as a vendor or dealer had no obligation generally to test the cutter. When RTC purchased and sold the cutter in common and general use, in the usual course of trade, without knowledge of its alleged dangerous quality and with nothing tending reasonably to call RTC's attention thereto, it was not negligent in failing to exercise care to determine whether the cutter was dangerous. *Pierce v. Liberty Furniture Co.,* 141 Ga. App. 175, 176 (233 SE2d 33). Accordingly, RTC could assume the manufacturer of the cutter had done its duty in properly constructing the article and not placing upon the market a commodity which was defective and likely to inflict injury. *Pierce,* supra at 176.

(d) However, a retailer may be held liable under an implied warranty of merchantability theory for selling a defective product; OCGA § 11-2-314 (2) (c) establishes a concept for retailers parallel to that of OCGA § 51-1-11 for manufacturers. *Rhodes v. R. G. Indus.,* 173 Ga. App. 51, 54 (4) (325 SE2d 465); *Pierce,* supra at 176. Whether the cutter was defective in view of the Georgia "open and obvious" rule will be discussed in Division 4 below.

4. In products liability cases predicated on negligence, the duty imposed is the traditional one of reasonable care, and the *manufacturer* need not provide, from a design standpoint, a product incapable of producing injury. Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design. Rather, a manufacturer is under no obligation to make a machine accident proof or foolproof, or even more safe. *Weatherby,* supra at 170; accord *Floyd v. Bic Corp.,* 790 FSupp. 276, 277-278 (N. D. Ga.). A manufacturer is under no obligation to make a machine totally modification-proof. In Georgia, "if the product is designed so that it is *reasonably safe* for the use intended, the product is *not* defective even though capable of producing injury where the injury results from an obvious or patent peril"; in such instances, "the product is not defective as a matter of law." (Emphasis supplied.) *Coast Catamaran Corp. v. Mann,* 171 Ga. App. 844, 847-848 (2) (321 SE2d 353). Under the Georgia "open and obvious rule" or "patent danger rule" it is provided that "a product is not defective [either in its design or manufacture] if the absence of a safety device is open and obvious, and there is no duty to warn of an obvious danger" or one that is "gener-

ally known." *Weatherby*, supra at 170, 173; see *Gragg v. Diebold, Inc.*, 198 Ga. App. 823 (403 SE2d 229). Moreover, under the open and obvious rule whether the peril from which an injury results is latent or patent is to be determined by an *objective view* of the product; the subjective perceptions of the user in this regard are irrelevant. *Weatherby*, supra at 171; accord *Wilson v. Bicycle South*, 915 F2d 1503, 1507 (1) (11th Cir.). While in many cases a defense based upon the obvious and common nature of the peril will be a question for the jury, a defendant is entitled to judgment as a matter of law in clear and palpable cases. *Weatherby*, supra at 173.

The standard whether there has been a breach of warranty by a *retailer*, like the standard imposed under strict liability upon a manufacturer, is whether the product sold or manufactured was defective. *Pierce*, supra; *Rhodes*, supra. In *Stodghill v. Fiat-Allis &c.*, 163 Ga. App. 811 (295 SE2d 183), appellant testified he was an experienced bulldozer operator and knew that absence of a protective cage exposed him to falling trees and limbs, but he *never anticipated* a tree might spring over the dozer blade and injure him. Nevertheless, this court held that "the failure of the appellees . . . to install a protective cage over the driver's seat . . . was an obvious characteristic of the machine which created no hidden peril and did not prevent the machine from functioning properly for the purpose for which it was designed"; accordingly, "it cannot reasonably be considered a design or manufacturing defect under Georgia law." Id. at 814; compare *Wilson*, supra at 1507.

When appellee attached the special-order larger cutter to the shaper and secured the small spindle guard over the cutter, the bright yellow blades of the cutter clearly protruded beyond the orange protective covering of the spindle guard. The contrast in colors, the spatial configuration of the guard to the cutter, and the obvious protrusion of the cutter beyond the physical protective limits of the guard, when viewed using an *objective* standard, results in the following conclusion: that as a matter of law the peril created by appellee's installation of an oversized cutter without guard modification produced a patent open and obvious danger to any user of the cutter. Moreover, the record establishes that, as a matter of law, both the shaper and the cutter were in and of themselves reasonably safe for the use for which they were intended. Some evidence of record that "kickback" is an unusual occurrence when using a wood shaper would not affect these determinations; neither are our determinations altered by evidence that appellee's injury may have been the result of the open-throat design on the cutter head which she installed on the shaper. When viewed *objectively*, the presence of the patent peril created an unequivocal signal of open and obvious danger that any user's hand might, through any of a myriad of negligent or accidental cutter-oper-

ation scenarios, come into contact with and be injured severely by the dangerous, exposed cutter. The presence of this open and obvious danger was adequate to warn the user that use of the shaper with an exposed cutter, regardless of the care taken in such use, could (and in fact did) result in serious injury to the user's hands. The presence of this open and obvious danger precludes, as a matter of law, any determination of deficiency as to the manufacture or sale of either the shaper or the cutter (without a larger guard), and relieved appellants of any duty to warn. Compare *Stodghill*, supra; *Wilson*, supra.

5. We need not address appellants' assertions that appellee's use of the shaper without the proper size spindle guard constituted assumption of the risk as a matter of law (see generally *Moore v. Service &c. Co.*, 200 Ga. App. 463 (408 SE2d 480)); neither need we address the sufficiency of the affidavits of appellee's expert witness, Cipriani.

6. *Beam v. Omark Indus.*, 143 Ga. App. 142 (237 SE2d 607) is factually distinguishable from this case, and involves a "stud gun" which misfired after a foreign power load fell into the open breech chamber, leaving the firing pin in an extended position; the "open and obvious" rule was not addressed in *Beam. Stiltjes v. Ridco Exterminating Co.*, 256 Ga. 255 (347 SE2d 568), cited by appellee, is also distinguishable; this case did *not* involve plaintiff's personal use of a product notwithstanding a patent "open and obvious" danger attendant such use. The hazard that objectively was "open and obvious" in this case, as a matter of law, was that if appellee's hand came in contact with the cutter, through any conceivable manner or for any conceivable reason, it would be severely injured as the cutter conspicuously extended beyond the shaper guard. Compare *Weatherby*, supra, with *Stodghill*, supra. We reject appellee's claim that "each of the series of facts, or links in the chain of events, must be open and obvious in order to justify a defendant's reliance on the 'open and obvious' defense." *Stodghill*, supra.

7. We also reject appellee's claim that FTC should have shipped the cutter with a protective device to prevent the type of injuries she sustained. The cutter, by virtue of the open and obvious rule was not defective as a matter of law; such "[a] product is not rendered 'defective' by the patent absence of a specific safety device which would serve to guard against a common danger connected with the limited use of a product, which danger the ultimate user can himself recognize and otherwise guard against." *Fortner v. W. C. Cayne & Co.*, 184 Ga. App. 187, 191 (2) (360 SE2d 920). A manufacturer is under no duty to render a machine or other item more safe when the danger to be avoided is obvious and patent to all when viewed by an objective standard. See *Branton v. Draper Corp.*, 185 Ga. App. 820, 822 (2) (366 SE2d 206); *Weatherby*, supra at 171.

8. Appellee's reliance on *J. C. Lewis Motor Co. v. Williams*, 85 Ga. App. 538 (69 SE2d 816) is misplaced. As stated in *Harley v. General Motors Corp.*, 97 Ga. App. 348, 351 (1) (103 SE2d 191), "in [*J. C. Lewis*, supra] it was alleged that the plaintiff and her husband did not know that the defect in the tractor rendered it dangerous to operate, whereas in the instant case, it is alleged that the defect in the automobile obviously rendered the automobile dangerous to operate." In plain and palpable cases, such as this, we may find the existence of an "open and obvious" danger as a matter of law and invoke the "open and obvious" rule. *Stodghill*, supra; see *Weatherby*, supra; see also *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 102 (303 SE2d 284) (assumption of risk) (physical precedent only); but cf. *Moore v. Powermatic &c. Indus.*, 738 FSupp. 1188, 1191 (N. D. Ill.) (refusing to dismiss that portion of complaint averring a duty to warn of kickback; but observing that "[t]he more one exposes the blade, the greater its chances of cutting something. . . . The increased risk is obvious"). *Moore*, supra at 738 FSupp. is factually distinguishable and its results are not compatible, under the attendant circumstances, with the application of an *objective standard* in determining whether a danger is "open and obvious."

Also, this court has recognized that use of certain machines, such as firearms, *power saws*, and perhaps motorcycles, may be considered to be intrinsically dangerous (*Branton*, supra at 822); this rationale applies to wood shapers. A manufacturer has no duty to warn of common dangers (dangers which are open and obvious when objectively evaluated), connected with the use of these products. See *Branton*, supra. "In assessing what is obvious, it must be remembered that . . . the American public is not child-like." *Wilson*, supra at 1507 (1).

⌐ Nor do we find persuasive testimony that, under certain speculative circumstances, appellee's hand might have been injured by the cutter even if the guard had covered the cutter. Suffice it to say that in such circumstances the danger no longer would have been "open and obvious" *as a matter of law*. Further, we find unpersuasive *Argo v. Perfection Prods. Co.*, 730 FSupp. 1109 (N. D. Ga.), as this case does not involve an "open and obvious" danger analogous to the circumstances before us. Similarly, *Brown v. Apollo Indus.*, 199 Ga. App. 260 (404 SE2d 447), although instructive, is not controlling as the case at bar involves a danger patently "open and obvious" to any user of the shaper, and not merely "open and obvious" to those having a particular knowledge or expertise due to prior education, training, or experience.

The judgments of the trial court are vacated, and this case is remanded for disposition consistent with this opinion.

*Judgments vacated and remanded with direction. Pope, C. J., and Andrews, J., concur.*

DECIDED JUNE 2, 1993 —
RECONSIDERATION DENIED JUNE 28, 1993 —

*Brennan & Wasden, Joseph P. Brennan, Marvin W. McGahee,* for Ream Tool Co.

*Brannen, Searcy & Smith, Leesa A. Bohler,* for Freeborn Tool Co.

*Fulcher Hagler, Reed, Hanks & Harper, J. Arthur Davison, James W. Purcell,* for Delta Intl. Machinery Corp.

*Edenfield, Stone & Cox, Gerald M. Edenfield, E. Lee Davis, Jr., Hendrix, Murray & Associates, Jerrell T. Hendrix,* for Newton.