A95A0148. BUFORD et al. v. TOYS R' US, INC.
(458 SE2d 373)

ANDREWS, Judge.

The Bufords filed suit on behalf of their minor son for injuries suffered when the bicycle he was riding separated at a weld, causing serious injury. They appeal from the trial court's grant of summary judgment to Toys R' Us (the seller).[1]

Viewed with all inferences in favor of the Bufords and under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), the evidence was that the seller sold bicycles made by several manufacturers in its stores. Bikes from more than one manufacturer,

---

[1] Several parties were originally named as defendants. The suit against SamChuly Bicycle of Korea remains pending.

including SamChuly Bicycle, bore the name "Rallye" at the direction of the seller. There is no evidence that the seller required compliance with any specifications before a bike was so designated. The Rallye bikes were not the only type sold by seller.

In November 1990, the Bufords purchased a Rallye bike for their son from seller. On April 21, 1991, while the boy was riding the bike, the steer tube separated from the front fork, throwing him face first to the pavement.

SamChuly shipped the bikes to the seller semi-assembled, i.e., all tubing was welded together and the seller merely had to install the pedals, seat, handlebars, and adjust the brakes and gears. The bicycle bore, on the tubing beneath the seat, SamChuly's name as manufacturer and listed a serial number.

The seller's expert witness, who had been in the bicycle manufacturing business for years, stated that the welding of the steer tube to the front fork would have been done by SamChuly and, once welded, would have been painted. Further, he stated that it was not the practice in the industry, before selling the bikes, to inspect welds like the one which gave way. He opined that the weld was inadequate when done.

Purchase orders used by the seller and signed by the manufacturer contained language stating that the bicycles met all safety requirements imposed by the Consumer Products Safety Commission and included an indemnification clause.

The Bufords alleged strict liability, negligence against the seller, and breach of the implied warranty of merchantability.

1. Regarding the claim for strict liability, OCGA § 51-1-11 (b) (1) provides for strict liability with respect to the *manufacturer* of personal property sold as new. It is not contested that SamChuly was the "manufacturer" of the bicycle, and, more specifically, the one which performed the welding of the tubing.

The Bufords attempt to circumvent this requirement, contending that, by requiring use of the "Rallye" mark, the seller became an "ostensible" manufacturer. As pointed out in *Alltrade v. McDonald,* 213 Ga. App. 758, 759 (445 SE2d 856) (1994), the case relied upon by the Bufords for this proposition, *Pierce v. Liberty Furniture Co.,* 141 Ga. App. 175, 179 (4) (233 SE2d 33) (1977), predated the 1987 tort reform act. Under that act, OCGA § 51-1-11.1, a "product seller" is not a manufacturer and this includes a seller who merely labels a product as its own prior to sale. *Alltrade,* supra; *Ream Tool Co. v. Newton,* 209 Ga. App. 226, 227 (3a) (433 SE2d 67) (1993).

2. The Bufords allege that the seller was negligent in failing to inspect the bicycle and discover the defective weld. Such a claim is premised on the finding of a duty on seller to test or inspect the welds, which is absent under these circumstances. A dealer or seller,

not the manufacturer, which purchases and sells an article in common and general use, such as a bicycle, in the usual course of trade and without knowledge of any dangerous quality, i.e., a latent defect, is not negligent for failing to determine the defect. Id. at 228 (3c); *Ryals v. Billy Poppell, Inc.*, 192 Ga. App. 787, 788 (386 SE2d 513) (1989); *Lowe v. American Machine &c.*, 132 Ga. App. 572, 576 (1) (208 SE2d 585) (1974).

3. Finally, the Bufords claim summary judgment was improperly granted on their claim for breach of the implied warranty of merchantability set out in OCGA § 11-2-314 (2) (c), i.e., that the goods were not "fit for the ordinary purposes for which such goods are used."

The argument made by the Bufords is that the establishment of this implied warranty on a dealer/seller "clearly places the same strict liability" on the seller as applies to the manufacturer.

As discussed in *Alltrade*, supra, however, liability on the seller under the implied warranty is not the same as the strict liability imposed on the manufacturer.

Even assuming a viable claim, however, under OCGA § 11-2-607 (3) (a), when goods have been accepted, as the bicycle was in 1990, the buyer must give notice to the seller within a "reasonable time after he discovers or should have discovered any breach. . . ." Here, although the accident occurred on April 21, 1991, no notice was received by seller until the complaint was served upon it two years later. We conclude that, under the circumstances, such notice was not "reasonable" as a matter of law. See *Cobb County &c. v. Mat Factory*, 215 Ga. App. 697, 703 (2) (452 SE2d 140) (1994); *Intl. Multifoods v. Nat. Egg &c.*, 202 Ga. App. 263, 266 (4) (414 SE2d 253) (1991).

The grant of summary judgment to the seller was proper.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 25, 1995 —
RECONSIDERATION DENIED JUNE 9, 1995 —

*Furlong & Franco, Walter W. Furlong, Leonard L. Franco*, for appellants.
*Freeman & Hawkins, Kathryn A. Thurman, Warner S. Fox*, for appellee.