A97A0109. CORBIN et al. v. FARMEX, INC.
(490 SE2d 395)

BEASLEY, Judge.

During the course of his employment by Wainwright, Corbin was driving a rig consisting of a tractor and two trailers. One trailer came unhitched from the other and collided with an automobile driven by Black. To recover for injuries sustained, Black sued Wainwright, Corbin, and others. She asserted various acts of negligence, including the inadequate and improper attachment of the trailers to each other.

Wainwright and Corbin asserted as a defense that Black's injuries were proximately caused by a defectively designed and manufactured hitch pin, which failed in its purpose of securing the connection and coupling between the trailers. Based on this, Wainwright and Corbin filed a third-party complaint against Farmex, Inc. For the purpose of resolving a motion for summary judgment filed by Farmex, the parties agreed that the hitch pin in question was designed and manufactured by an Ohio corporation known as JA-BIL, Inc., and that, after purchasing assets of JA-BIL, Farmex introduced the hitch pin into the stream of commerce in its capacity as a wholesale vendor to a distributor in Georgia. Wainwright and Corbin appeal the trial court's grant of summary judgment to Farmex.

1. They contend that questions of fact exist as to whether Farmex can be held strictly liable in tort for a defect in the hitch pin.

"OCGA § 51-1-11 (b) (1) provides for strict liability with respect to the *manufacturer* of personal property sold as new." (Emphasis in original.) *Buford v. Toys R' Us*, 217 Ga. App. 565, 566 (1) (458 SE2d 373) (1995); *Ream. Tool Co. v. Newton*, 209 Ga. App. 226, 227 (3) (a) (433 SE2d 67) (1993). "A mere 'product seller' is not a manufacturer, and is not liable as a manufacturer on grounds of strict liability. OCGA § 51-1-11.1." Id. But when a corporation that has manufactured a product is purchased by another corporation, the purchaser may be held liable for the torts of the seller under certain circumstances.

Approximately two years before the collision in this case, Farmex and JA-BIL entered into an "Asset Purchase Agreement" under which Farmex purchased substantially all assets of JA-BIL "as a going concern" in order to engage in the continued conduct of JA-BIL's business of manufacturing, warehousing, and selling hitch parts to the agricultural community and screw machine job shop. Farmex bought all the manufacturing equipment. The assets transferred expressly included all the assets "used or held for use in connection with the Business . . . and . . . the use of which is reasonably necessary for the performance of any contract to be assumed by Purchaser and the continued conduct of the Business as currently conducted."

The agreement listed certain excluded assets and liabilities, of which the latter were much more extensive. The acquired assets, which included inventory, equipment, fixtures and *goodwill*, were valued at $867,106.54. Consideration for the purchase included Farmex's assumption of various specified liabilities of JA-BIL in an equal amount. As between them, the assumed liabilities did not include any tort or product liability. As a condition precedent to completion of the asset purchase agreement, and for a separate monetary consideration in the amount of $323,810, JA-BIL, its president, and another individual signed a non-competition agreement of several years duration.

When one company sells its assets to another company, the purchaser does not acquire the liabilities of the seller merely because of its purchase of the seller's assets. But, four exceptions have been recognized. As summarized in *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284 (328 SE2d 726) (1985), "[g]enerally, a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation. [Cit.]" Compare Restatement of the Law, Torts, Products

Liability (adopted May 20, 1997), § 12, Liability of Successor for Harm Caused by Defective Products Sold Commercially by Predecessor. See Maleski, Ga. Products Liability (2d ed. 1993), p. 213, § 8-16. Wainwright and Corbin argue that the asset-purchase transaction between Farmex and JA-BIL was a de facto merger and that Farmex is a mere continuation of JA-BIL.

In Georgia, a transaction may be found to be a de facto merger only if there is, among other things, "a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation." (Citations omitted.) *Howard v. APAC-Ga.*, 192 Ga. App. 49, 50 (383 SE2d 617) (1989). Similarly, "[i]n Georgia, the common law continuation theory has been applied where there was some identity of ownership. [Cits.]" *Bullington*, supra at 284.

Farmex did not pay for the assets it acquired from JA-BIL with shares of its own stock. None of the stockholders of either corporation was a stockholder of the other. There being no identity of ownership between the corporations, neither the de facto merger doctrine nor the continuation theory, as traditionally applied, fits. However, as recognized in *Bullington*, courts in other states have expanded successor liability in product liability cases based on the policy considerations underlying strict tort liability for defective products. The Supreme Court of Georgia has not yet decided a case with the operative facts which exist here.

"The purpose of the rule of strict tort liability 'is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' ([Cit.])" *Ray v. Alad Corp.*, 560 P2d 3, 8 (2) (Cal. 1977), cited approvingly in *Bullington*, supra at 285. " '[T]he paramount policy to be promoted by the rule is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them.' [Cit.]" (Emphasis omitted.) *Ray*, supra. In *Cyr v. B. Offen &c.*, 501 F2d 1145 (1st Cir. 1974), also cited in *Bullington*, supra at 284, the court identified four reasons for imposition of strict liability in tort: "(1) the manufacturer is better able to protect itself and bear the costs while the consumer is helpless; (2) it is the manufacturer which has launched the product [in question] into the channels of trade; (3) it is the manufacturer which has violated the representation of safety implicit in putting the product into the stream of commerce; and (4) the manufacturer is the instrumentality to look to for improvement of the product's quality." 501 F2d at 1154 (13).

The first and fourth reasons identified in *Cyr* apply where the successor in ownership continues to manufacture the same product line as its predecessor. See *Cyr*, supra; *Dawejko v. Jorgensen Steel Co.*, 434 A2d 106, 109 (1) (Pa. 1981), also cited with approval in *Bullington*, supra at 285. Although Farmex has presented evidence that it has never designed or manufactured a hitch pin of the same type as the one in question, there is evidence in the record that it did continue to manufacture the same product line. This meets *Cyr*'s first and fourth reasons for imposition of strict tort liability. The second and third reasons likewise would apply because the purchaser has acquired the product in question from the seller *and* put it into the stream of commerce.

This distinguishes *Bullington*. On the facts of that case, the Court refused to expand the continuation exception so as to include continuation of manufacture. There, one corporation purchased the assets of another corporation but did not sell the product in question (a table saw) *or* continue to manufacture the same product line. The product was released into the stream of commerce by the predecessor manufacturer itself, prior to the transfer of assets, and the successor never sold or manufactured table saws. The Court in *Bullington* did not reject *Cyr* or *Ray*. It distinguished *Cyr* because the new corporation in *Cyr* continued to produce the same product. *Ray* was distinguished because in *Ray*, as here, the new corporation produced the same product line. The Court explained the rationale in *Cyr*: "[T]he successor was in a position to improve the quality of the product in question or to reflect the possible defects in the cost of the product." *Bullington*, supra at 285. These circumstances do not preclude a finding that Farmex is a manufacturer for the purpose of strict liability.

Further, a jury could find on the present state of the record that the asset-purchase agreement between Farmex and JA-BIL left the latter company with substantial liabilities but insubstantial assets with which to satisfy them. Such a factor has been recognized as another exception to the general rule that a purchaser of corporate assets does not acquire the seller's liabilities. See *Ray*, supra at 7; *Dawejko*, supra at 107.

Consequently, the court erred in granting Farmex's motion for summary judgment on Wainwright and Corbin's strict liability theory.

2. Wainwright and Corbin also contend that questions of fact exist as to whether Farmex is liable for its own negligence in failing to warn of foreseeable dangers from reasonable use.

" 'An action in products liability may proceed on one or a combination of theories of negligence, strict liability, or breach of warranty. (Cits.)' [Cit.]" *Powell v. Harsco Corp.*, 209 Ga. App. 348, 349 (1) (433 SE2d 608) (1993). "The common-law duty imposed upon suppliers of

chattels includes the duty to warn of foreseeable dangers arising from the reasonable use for which the product is intended and requires the exercise of reasonable care to inform third persons of the dangerous condition or of the facts which make the product likely to become dangerous. [Cit.]" Id. at 349-350 (2).

There is no evidence that Farmex knew or should have known of any defect in the product or of any prior claim that a failure of such product of this type or design resulted in property damage or personal injury. The danger being unforeseeable in a reasonable context, as a matter of law, Farmex cannot be held liable under a negligence theory. *Hester v. Human*, 211 Ga. App. 351, 353 (3) (439 SE2d 50) (1993). See Restatement of the Law, Torts, § 13, Liability of Successor for Harm Caused by Successor's Own Post-Sale Failure to Warn.

The holding in Division 1 requires reversal of the judgment.

*Judgment reversed. McMurray, P. J., Ruffin and Eldridge, JJ., concur. Andrews, C. J., Birdsong, P. J., and Smith, J., dissent.*

SMITH, Judge, dissenting.

Because we are bound by the Supreme Court of Georgia's decision in *Bullington v. Union Tool Corp.*, 254 Ga. 283 (328 SE2d 726) (1985), I must respectfully dissent. In *Bullington*, the Supreme Court weighed the same arguments raised by the majority here and held that the continuation exception did not apply "[s]ince the new corporation never *produced* the product." (Emphasis supplied.) Id. at 285. The evidence here is uncontroverted that, while Farmex may have sold the hitch pin in question out of inventory acquired from its predecessor, it never produced the product. More importantly, the Supreme Court explicitly declined to expand the continuation exception in the manner proposed by the majority here, even though the new corporation continued a product line taken over from its predecessor. Id. However persuasive the arguments for expansion of that exception may be, it is for the Supreme Court, not this Court, to take that step.

For these reasons, I dissent.

I am authorized to state that Chief Judge Andrews and Presiding Judge Birdsong join in this dissent.

DECIDED JUNE 27, 1997 —
RECONSIDERATION DENIED JULY 28, 1997 —

*Miller & Towson, Wallace Miller III, John D. Raines III*, for appellants.

*Reynolds & McArthur, W. Carl Reynolds, Katherine L. McArthur,*

*Adams, Barfield, Dunaway & Hankinson, David B. Dunaway,* for appellee.