[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15179
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00875-ODE


GRANT M. WILLIAMS,

Plaintiff-Appellant,

versus

PACIFIC CYCLE, INC.,
d.b.a. Schwinn Bicycles,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 11, 2016)

Before TJOFLAT, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

After he suffered a bicycle accident, Grant Williams brought a products liability action against Pacific Cycle, Inc. ("Pacific Cycle") on claims of strict liability, negligence, and failure to warn. The district court granted summary judgment in favor of Pacific Cycle on all three counts. Our careful review persuades us to affirm the ruling of the district court.

I.

Williams fell from his bicycle on March 23, 2011 and struck his head on the pavement. As a result, he suffered a severe brain injury. At the time of the accident, Williams was wearing a Pulsar model Schwinn bicycle helmet ("the Pulsar").

Pacific Cycle owns the Schwinn brand name for bicycles and bicycle accessories, including helmets. Before June 26, 2008, Pacific Cycle had licensed the right to sell bicycle helmets under the Schwinn brand to PTI Sports ("PTI"). Then on June 26, 2008, Pacific Cycle purchased certain assets from PTI including inventory of Schwinn bicycle helmets, certain sales orders, and purchase contracts.

The Pulsar helmet Williams was wearing at the time of his accident had been manufactured by Strategic Sports, Limited ("Strategic") on July 2, 2008. Pacific Cycle says Strategic alone designed the Pulsar model line and that Pacific Cycle's role was merely to brand it "the Pulsar." It was PTI that selected an existing Strategic product, the P-13 helmet model, and set certain design specifications and

2

requirements a product needed to meet in order to be branded as the "Pulsar" helmet. Williams argues that by taking these actions, PTI designed the helmet. In support of this theory, Williams points to a "bill of materials" that includes a requirement of "[f]iber tape for reinforcement, apply to foam per PTI specs." The record also reflects that PTI created an owner's manual that was distributed with the Pulsar and gave Strategic a "header card" for the helmet that detailed style conventions including the font for the Schwinn branding. Strategic placed required labels on the Pulsar line. The record is unclear about whether PTI or Pacific Cycle placed the order with Strategic, but demonstrates that after the helmet was manufactured, Pacific Cycle imported the shipment of Pulsars and distributed them to retailers.

As an importer of bicycle helmets, Pacific Cycle is subject to federal regulations promulgated by the United States Consumer Products Safety Commission ("CPSC"). See 16 C.F.R. § 1203. These regulations require that either the importer or foreign manufacturer conduct a "reasonable testing program" to ensure compliance with CPSC standards. Id. § 1203.34(e)(1). Strategic conducted these tests as part of its agreement with PTI and Pacific Cycle.

## II.

We review the grant of summary judgment de novo. Byars v. Coca-Cola Co., 517 F.3d 1256, 1263 (11th Cir. 2008). Summary judgment is appropriate only

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).

Williams seeks relief under three possible tort theories: (1) strict liability for design defect; (2) negligent design and manufacture, and negligent import, sale, and distribution; and (3) failure to warn. The district court granted summary judgment on all three claims. We address each in turn.

A.

Williams's strict liability claim hinges on whether Pacific Cycle meets the definition of a "product seller" under Georgia law. Georgia law categorically excludes from strict liability any "product sellers," defined as:

> [A] person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller.

O.C.G.A. § 51-1-11.1. Georgia courts have made clear that this statutory scheme is intended to "confine strict liability to actual manufacturers—those entities that have an active role in the production, design, or assembly of products and placing them in the stream of commerce." Alltrade, Inc. v. McDonald, 445 S.E.2d 856,

4

858 (Ga. Ct. App. 1994) (quoting <u>Freeman v. United Cities Propane Gas of Ga., Inc.</u>, 807 F. Supp. 1533, 1540 (M.D. Ga. 1992)).

Williams points out that PTI provided the instructional booklet and header card for the Pulsar; provided some design specifications; imported the Pulsar; and shipped the Pulsar to a retailer.  Williams argues that by these actions, Pacific Cycle "exercised 'input' or was actively involved" so as to raise a material issue of fact as to whether Pacific Cycle is a manufacturer rather than a product seller.  Williams also asserts that due to Pacific Cycle's role as an importer, it was affirmatively required under CPSC regulations to verify the Pulsar's compliance with safety standards.  In Williams's view, the record creates a material question of fact about whether Pacific Cycle was more than a product seller.  We agree with the district court that each of Williams's arguments fail as a matter of law.[1]

First, Georgia courts have repeatedly recognized that the actions Williams attributes to Pacific Cycle are not sufficient to make Pacific Cycle a manufacturer.  Providing an instructional booklet and header card is akin to, and perhaps even part of, labelling the product.  <u>See</u> <u>Alltrade</u>, 445 S.E.2d at 858 ("[O]ne who merely labels a product as its own prior to its sale . . . is a product seller.").  Similarly,

---

[1]Pacific Cycle argues that the distinction between manufacturer and product seller is irrelevant.  It says that PTI was a mere licensee of the Schwinn brand (including the Pulsar), and that Pacific Cycle assumed no liabilities for PTI's pre-purchase conduct when acquiring PTI.  Like the district court, we find that there is a genuine dispute of fact about what liabilities Pacific Cycle assumed from PTI.  However, this is not material because even if Pacific Cycle assumed every liability alleged by Williams, Georgia law still categorically excludes Pacific Cycle, the product seller, from strict liability.

Georgia courts have rejected the idea that shipping and distributing a product makes a company a manufacturer. See Ream Tool Co. v. Newton, 433 S.E.2d 67, 69–70 (Ga. Ct. App. 1993) (finding that a company that ships, distributes, and sells a product is a product seller). Georgia courts have also made clear that even providing requirements or minor design specifications is not sufficient to make a company a manufacturer under Georgia law. See Schneider v. Tri Star Int'l, Inc., 476 S.E.2d 846, 847–48 (Ga Ct. App. 1996) (informing manufacturers of requirements for product size, appearance, hardness, and packaging requirements was within the role of a product seller); Boyce v. Gregory Poole Equip. Co., 605 S.E.2d 384, 388 (Ga. Ct. App. 2004) (finding that a company was a product seller under Georgia law even where the company's general manager served on the advisory board for the manufacturer's design team). As for PTI, its specifications did not change the P-13 model that Strategic had already designed. It merely provided stylistic additions and packaging instructions and materials.[2]

---

[2] In arguing that Pacific Cycle is a manufacturer, Williams also relies on Nelson v. C.M. City, Inc., 463 S.E.2d 902 (Ga. Ct. App. 1995), for the proposition that "a company [that] has put its own trade name on a product, thus leading the public to believe it manufactured the product even though it did not" should be held as a manufacturer. Id. at 905 (quoting Alltrade, 445 S.E.2d at 761 (Pope, C.J., concurring)). However, Williams's reliance on Nelson is misplaced. Nelson required that the defendant "designed" the product in dispute and "conceived the idea . . . according to [the company's] intention, design, specifications, and formulation," specifically distinguishing a company that "merely ha[d] its name stamped on [products]." Id. at 903–04. Pacific Cycle's role in stamping the Schwinn brand upon Strategic's P-13 design falls squarely within the latter role of a product seller.

Second, the fact that Pacific Cycle is a bicycle helmet importer subject to federal regulations does not make it a manufacturer under Georgia law. Williams argues that CPSC regulations placed an affirmative responsibility upon Pacific Cycle to meet certain safety standards, including the duty to "conduct a reasonable testing program" to ensure compliance with such standards.[3] 16 C.F.R. § 1203.33. Williams says this active role, imposed by federal regulations, raises a question of fact about whether Pacific Cycle is a manufacturer under Georgia law. However, the same CPSC regulations allow Pacific Cycle to rely on Strategic, its foreign manufacturer, to conduct the testing program, so Pacific Cycle had no active role in testing. See 16 C.F.R. § 1203.34(e). And in any event, Georgia courts have held that the presence of a testing program is not sufficient to bring a company within the definition of a manufacturer under Georgia law. See Schneider, 476 S.E.2d at 848 (finding that a company that conducted routine "spot tests and quality checks" on imported products was a product seller).

## B.

For his negligence claim, Williams argues that the district court improperly granted summary judgment in favor of Pacific Cycle for two reasons: (1) Pacific Cycle was an "ostensible manufacturer" under Georgia law and thus may be liable

---

[3] Williams also emphasizes that under CPSC regulations, an importer of helmets manufactured abroad is specifically defined as a "manufacturer." See 16 C.F.R. § 1203.32(b). However, the definition of a "manufacturer" under federal regulations does not govern the definition under Georgia law for strict liability purposes.

7

for negligent design and manufacture; and (2) as a bicycle helmet importer, Pacific Cycle had an affirmative duty under CPSC federal regulations to inspect the Pulsar helmets, and therefore may be held liable for negligent importation, sale, and distribution in failing to notice and correct a product defect. [4]  These arguments also fail as a matter of law.

First, Pacific Cycle cannot be held liable for negligent manufacture or design as an "ostensible manufacturer" because neither Pacific Cycle nor PTI designed or manufactured the Pulsar.  The "ostensible manufacturer" rule says that "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."  Alltrade, 445 S.E.2d at 858 (quotation omitted) (quoting Second Restatement of the Law of Torts, § 400).[5] But to be liable for negligent manufacture or design a company must have breached its duty of reasonable care in the manufacture or design process.  And in

---

[4] The parties dispute whether the Pulsar's design was actually defective.  We do not address the arguments on this issue because they were not presented to the district court.  In any event, the existence of a defect is irrelevant to the disposition of these claims.

[5] The validity of the "ostensible manufacturer" doctrine in negligent manufacture or design claims under Georgia law after Georgia's 1987 statutory tort reform is not clear.  Alltrade made clear that this doctrine does not apply in strict liability claims, and the doctrine's applicability in negligence has not been examined in any Georgia case since 1994, when Alltrade was decided.  See Alltrade, 445 S.E.2d at 858.  In re Stand 'N Seal, No. 1:07MD1804, 2009 WL 2145911, at *3–4 (N.D. Ga. July 15, 2009), and Powell v. Harsco Corp., 433 S.E.2d 608, 609 (Ga. Ct. App. 1993), indicate that the "ostensible manufacturer" doctrine might still be valid for some negligence claims, such as negligent failure to warn.  A product seller will necessarily have some involvement in the duty to warn, but not necessarily in the duty of reasonable care that applies to the manufacture or design process.  We need not decide the ongoing viability of Georgia's "ostensible manufacturer" doctrine here, so we do not.

order to breach this duty the company must have had some involvement in the manufacture or design of the product. See Ream, 433 S.E.2d at 70; see also Buford v. Toys R' Us, 458 S.E.2d 373, 375 (Ga. Ct. App. 1995). As explained above, PTI's minor specifications are not sufficient to raise a material question of fact as to whether it was actively involved in the manufacture or design of Strategic's preexisting P-13 model. Pacific Cycle therefore cannot be held liable for negligent manufacture or design.

Second, Pacific Cycle cannot be held liable for negligent importation, sale, or distribution based on the affirmative duties imposed on it by CPSC federal regulations, including the implementation of a testing program. Georgia law places no duty on the seller of a product to test or inspect the product. See Fed. Ins. Co. v. Farmer's Supply Store, Inc., 555 S.E.2d 238, 240 (Ga. Ct. App. 2001). While CPSC federal regulations do impose such a duty on Pacific Cycle, those regulations allow Pacific Cycle to delegate that duty to the foreign manufacturer. See 16 C.F.R. § 1203.34(e). Pacific Cycle did just that. And in any event, Williams has offered no evidence that Pacific Cycle may have breached its duty. Rather, Williams concedes that, in testing conducted by Strategic, the Pulsar met all minimum requirements mandated by CPSC federal regulations.

C.

9

Finally, Williams asserts that the district court improperly granted summary judgment to Pacific Cycle on his failure to warn claim. Under Georgia law, a product seller has a duty to warn only of dangers that are either actually or constructively known to the seller at the time of sale. Farmer v. Brannan Auto Parts, Inc., 498 S.E.2d 583, 585 (Ga. Ct. App. 1998). A product seller is on notice of a danger if the seller has actual knowledge or should have reasonably foreseen a danger from the product. See id. The plaintiff carries the burden of proving the defendant's actual or constructive knowledge. John Crane, Inc. v. Wommack, 489 S.E.2d 527, 530 (Ga. Ct. App. 1997).

Williams pointed to no evidence that Pacific Cycle was aware of any lawsuit, incident, complaint, or recall involving the Pulsar. The Pulsar was fully compliant with CPSC federal regulations. There is therefore no material question about whether Pacific Cycle had any notice of any danger regarding the Pulsar, and the district court properly granted summary judgment for Pacific Cycle on the failure to warn claim.

We affirm the district court's grant of summary judgment as to all claims.

**AFFIRMED.**

10