69355. CURLEE v. MOCK ENTERPRISES, INC. et al.
(327 SE2d 736)

BEASLEY, Judge.

Appellant Curlee was injured on June 12, 1978, when a .44 caliber "Virginian Dragoon" pistol discharged and a bullet struck him, necessitating the amputation of his leg. Curlee was on a pleasure sharkfishing trip off St. Simon's Island, Georgia, with his friend Kapp, who owned the boat and the gun. Kapp had purchased this replica of a "cowboy"-type pistol on March 24, 1978.

Kapp hooked a shark and, as it neared the boat, he told Curlee to get ready to shoot. Curlee retrieved the gun from the bait well and cocked it, but the shark sounded. Kapp directed Curlee to put the gun in its safety position, set it down, and drive the boat. Before placing the gun in the boat driver's seat and beginning to drive, Curlee put the gun hammer in what he believed to be the safety position. Curlee was hit when the boat pitched in the choppy seas and the gun fell off the seat and fired.

The suit in issue here was filed on June 11, 1982. The end result of several amendments was a complaint against the manufacturers and sellers of the pistol alleging negligence, strict liability, and breach of express and implied warranties. Eventually, after a great deal of discovery, defendants moved for summary judgment. The court carefully reviewed the entire record and granted the motions, having first made detailed findings of fact and conclusions of law to explain its

ruling.

The trial court rejected plaintiff's contention that under the facts it had admiralty jurisdiction which would make maritime law, and consequently, the doctrine of laches, applicable. Instead, it applied Georgia civil law, which by the two-year statute of limitations (OCGA § 9-3-33 (Code Ann. § 3-1004)) would bar negligence and strict liability claims after June 11, 1980, and which by the four-year statute of limitations (OCGA § 11-2-725 (Code Ann. § 109A-2—725)) would bar the breach of warranty claims after March 23, 1982, four years after the "tender of delivery." The court examined all the evidence in light of plaintiff's contentions that the statutes of limitation were tolled by legal incompetency because of mental illness (OCGA §§ 9-3-90, 9-3-91 (Code Ann. §§ 3-801, 3-802)) and by fraud of the defendants which debarred or deterred plaintiff's earlier bringing of the suit (OCGA § 9-3-96 (Code Ann. § 3-807)). The court ruled that the evidence demanded a finding of mental incompetency for nine months, which made plaintiff's breach of warranty claims timely but did not save his negligence and strict liability claims. The court further ruled that the evidence demanded a finding of no fraud which would toll the effect of time's march. The warranty claims fell because plaintiff lacked privity and did not come with the third-party beneficiary class provided for in OCGA § 11-2-318 (Code Ann. § 109A-2—318) because he was not a guest at Kapp's home when the gun discharged.

Summary judgment was therefore granted and Curlee appealed. *Held*:

1. As a general rule, the federal admiralty courts and the state courts have concurrent jurisdiction of actions in personam for damages or injury resulting from maritime torts in cases over which exclusive jurisdiction has not been conferred on the federal courts. If a tort be maritime and cognizable in admiralty, maritime law governs with respect to the rights and liabilities of the parties, without regard to the court in which relief is sought, whether the action be brought in a federal district court or in a state court. See *Alaska S. S. Co. v. Mc-Hugh*, 268 U. S. 23 (45 SC 396, 69 LE 825) (1925); *Chelentis v. Luckenbach S. S. Co.*, 247 U. S. 372 (38 SC 501, 62 LE 1171) (1918). The trial courts of this state have exercised admiralty jurisdiction and adjudicated claims properly brought thereunder, pursuant to maritime law. See inter alia, *Daniels v. Stevens*, 171 Ga. App. 192 (318 SE2d 812) (1984).

Curlee urges that the circumstances of the case at bar brought it properly within the scope of the trial court's concurrent admiralty jurisdiction. If admiralty jurisdiction is sustainable, then the trial court improperly held itself bound to apply state statutory limitation periods to reach its ultimate determination that Curlee's claims were time-barred. Curlee argues that the proper analysis of the timeliness

of his claims is made under the maritime doctrine of laches.

The prerequisite that the tort or wrong involved have a sufficient nexus or connection with traditional maritime activity in order to invoke admiralty jurisdiction was applied in *Foremost Ins. Co. v. Richardson*, 457 U. S. 668 (102 SC 2654, 2658, 73 LE2d 300) (1982). Here there is no such nexus. What Curlee complains about is the manufacture of the gun, in that there was negligence and breach of warranties and strict liability with regard to its manufacture and therefore its subsequent sale. He would have the court apply a different body of law to these alleged wrongs with respect to a non-maritime product just because the injury occurred on a boat. The tort he claims is not some maritime activity, or some wrongful use of the gun on the boat, i.e., a tort occurring or related to the navigable waters, but rather its negligent and improper manufacture. The alleged wrongs are not connected in any way with maritime commerce. They are no different in substance because the injury happened to occur on water. There is no maritime dispute and there is no federal maritime interest to be served by applying admiralty law to the issues made here. See *Harville v. Johns-Manville Prods. Corp.*, 731 F2d 775, 785-786 (11th Cir. 1984). Any liability of the defendants for the manufacture and sale of the gun in this products liability case has not even the most attenuated impact on maritime activity.

Our state tort law is most directly concerned with such accidents and is quite capable of resolving the present controversy without any significant effect on the federal interest in maritime activities. See *Onley v. South Car. Elec. Gas Co.*, 488 F2d 758 (4th Cir. 1973).

Moreover, plaintiff has not shown that there is any separate maritime law to be applied with respect to which the gun, which was not even a maritime-type product, was negligently manufactured. Apparently, all he is interested in is avoiding the Georgia civil law statutes of limitations and being able to grasp and have safe harbor in the admiralty doctrine of laches.

The trial court properly interpreted existing case law in finding that Curlee's claims did not fall within the purview of admiralty jurisdiction.

2. Ordinarily, whether or not a cause of action is barred by the statute of limitations is a mixed question of law and fact and may be either, according to the manner in which it is presented. Where the facts are in doubt or dispute, this question is one of fact to be determined by the trier of fact, but where the facts are not disputed, the question of whether the case is within the bar of the statute is one of law for the court. See 54 CJS, § 399; *Morris v. Johnstone*, 172 Ga. 598 (158 SE 308) (1931).

Once the trial court determined that principles of maritime law were inapplicable to the case at bar, it next properly found that con-

sidering the evidence most favorably to Curlee, a jury could not, as a matter of law, find incapacity of Curlee or fraud on the part of the manufacturers which would toll the statute of limitations.

As an exception to the statute of limitations, OCGA § 9-3-96 (Code Ann. § 3-807) should be strictly construed. *Bates v. Metro. Transit System*, 128 Ga. App. 720 (197 SE2d 781) (1973); *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343 (245 SE2d 297) (1978). The fraud required to toll the statute of limitations under this code section must be of that character which involves moral turpitude, that is, actual fraud rather than constructive fraud, in the absence of a confidential relationship, and in addition, such actual fraud must have the effect of debarring and deterring the plaintiff from his action. *Riddle v. Driebe*, 153 Ga. App. 276 (265 SE2d 92) (1980); *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980); *Kessler v. Liberty Mut. Ins. Co.*, 157 Ga. App. 287 (277 SE2d 257) (1981); *Sutlive v. Hackney*, 164 Ga. App. 740 (297 SE2d 515) (1982).

In essence, Curlee bases his allegations of fraud on IAC's use of its trade-name "Interarms" on the pistol and in the accompanying literature, without expressly identifying itself as International Armament Corporation. In 1975 defendants Alliance and IAC entered into a contract for the manufacture of 100,000 "Virginian" revolvers. Alliance was to form a new corporation to be named "Interarms Industries, Inc.," which would then assume the manufacturing and related functions of the contract with IAC. IAC granted to Alliance and this new subsidiary the right to use the name "Interarms" as long as the contract remained in force. "Interarms" standing alone was a trade name of IAC. The address of IAC was 10 Prince Street, Alexandria, Virginia. Interarms Industries, Inc., and its registered agent were located in other cities in Virginia. The writing or engraving on the guns manufactured pursuant to the 1975 agreement with specific regard to the manufacturer's identity was the engraving stating: "Interarms, Alexandria, Virginia, USA." The literature to accompany the guns at the time of sale also indicated the manufacturer of the gun as "Interarms" with the Alexandria, Virginia, address listed.

There is no evidence that the relationship between Curlee and the manufacturers was confidential or of a fiduciary nature. Nor can we find that any imprecision or concealment of exact identification by the manufacturers surpassed more than mere silence so as to become a positive affirmative act. See *Comerford v. Hurley*, 154 Ga. App. 387 (268 SE2d 358) (1980).

Curlee further contends that because these manufacturers were not expressly authorized to do business in Georgia and had no registered agent for service of process in Georgia, they effectively "removed" themselves from Georgia for the purposes of OCGA § 9-3-94 (Code Ann. § 3-805), so as to toll the running of the statute of limita-

tions. Even characterizing the actions or lack thereof by the manufacturers as "removal," any tolling by reason of this applies only if the removal makes it impossible to perfect service. See *Railey v. State Farm &c. Ins. Co.*, 129 Ga. App. 875 (201 SE2d 628) (1973). Here, Curlee could have tried to perfect service outside Georgia by utilizing the assistance of long arm jurisdiction. Also, information contained in an affidavit filed in Curlee's prior litigation in North Carolina provided Curlee with substantial information for locating the manufacturers.

The trial court properly concluded that there were no genuine issues of material fact as to the question of any fraudulent conduct on the part of the manufacturers that could be found to toll the applicable statute of limitations.

3. Curlee's second basis for the tolling was OCGA § 9-3-90 (Code Ann. § 3-801), which provides quiescence during a period of mental incompetency. In reaching its determination that no material issues of fact remained for jury consideration, the court applied the rules that " 'On motion for summary judgment, all evidence, including the testimony of the party opposing the motion for summary judgment, is generally to be construed against the movant. *Burnette Ford v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971). However, . . . where there is a direct contradiction in the testimony of the respondent as to a material issue of fact, that party's unfavorable testimony will be taken against him. *Tri-Cities Hosp. Auth. v. Sheats*, 247 Ga. 713 (279 SE2d 210) (1981). This is a modification of the previous rule set forth in *Chambers v. C & S Nat. Bank*, 242 Ga. 498 (249 SE2d 214) (1978), to the effect that respondent's testimony will be construed against him only where the contradiction is deliberate or intentional. *Cook v. Delite Beauty Supply*, 165 Ga. App. 859, 860 (303 SE2d 40) (1983).' " *Henson v. Atlanta Cas. Co.*, 169 Ga. App. 754, 755 (315 SE2d 268) (1984).

"The test for mental incapacity is not whether one did not manage his own affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not 'bright' or not clear about some matters occurring during the period is not evidence of mental incompetency. *Gulf Life Ins. Co. v. Wilson*, 123 Ga. App. 631 (181 SE2d 914) (1971). The test is one of capacity — whether the individual, being of unsound mind, could not manage the ordinary affairs of his life. *Kell v. Bridges*, 77 Ga. App. 424 (48 SE2d 780) (1948)." *Tri-Cities Hosp. Auth. v. Sheats*, 156 Ga. App. 28, 30 (273 SE2d 903) (1980); aff'd 247 Ga. 713 (279 SE2d 210) (1981). There is a pattern of inconsistency in the statements and evidence proffered by Curlee in regard to the duration and nature of his claimed disability and incapacity.

The record is replete with instances during Curlee's alleged ex-

tended period of incapacitation in which he managed the affairs of his life by, among other things, consulting with, hiring, and then firing several attorneys who filed suit in his behalf; settling certain litigation on his own; being deposed in an unrelated case; moving his residence several times; working for a time selling real estate; getting divorced; driving several trips between St. Simon's Island, Georgia, and Greensboro, North Carolina, including one time to pick up and deliver to his lawyer the gun in question; moving into the residence of a friend and going into business partnership with her to start a wine and cheese shop; managing a restaurant; and trying to personally negotiate the present claim.

Ordinarily the question of mental capacity is one of fact to be determined by a jury. *McCraw v. Watkins*, 242 Ga. 452 (249 SE2d 202) (1978). However, the evidence offered on behalf of Curlee is a self-portrait of one who has merely failed to take control of or simply mismanaged the ordinary affairs of life rather than of an individual lacking in the capacity to manage his own affairs. The evidence of Curlee's conduct would not authorize a finding that he was mentally incapacitated in the sense necessary to toll the statute's effect. Once the allegations of his incapacity were successfully pierced, Curlee had the burden to come forward with evidence demonstrating that an issue of fact remained. See *Tri-Cities Hosp. Auth. v. Sheats*, supra. Furthermore, " 'If a defendant moves for summary judgment asserting that the applicable period of limitations has elapsed, his motion should not be denied for the reason that there might possibly be facts which would toll the Statute of Limitations.' *Carroll v. Pittsburgh Steel Co.*, 103 FSupp. 788, 790 (W.D. Pa. 1952); cited in *Houston v. Doe*, 136 Ga. App. 583, 585 (222 SE2d 131) (1975); . . ." *Johnson v. Gamwell*, 165 Ga. App. 425, 426 (301 SE2d 492) (1983). If facts did exist which would toll the statute of limitations, Curlee had the burden of setting forth and supporting these facts. *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278 (306 SE2d 366) (1983).

The trial court made no error in concluding that no genuine issues of material fact remained on the question of incapacity which would effectively toll the statute of limitations.

4. Curlee finally contends that the trial court erred in interpreting and construing OCGA § 11-2-318 (Code Ann. § 109A-2—318) to hold that he lacked the necessary privity with the appellee/defendants to maintain a breach of warranty action. This code section delineates the extent of third-party beneficiaries of express or implied warranties and provides in pertinent part: "A seller's warranty whether express of implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the

warranty. . . ."

Curlee asserts that because he met Kapp, the owner of the handgun, briefly at Kapp's home before leaving on the fishing excursion, he is entitled to be characterized as a guest in the home of Kapp for the purpose of third-party beneficiary status under the statute.

Any question as to the proper construction to be given to a statute is for the court to determine (*Crosby Aeromarine, Inc. v. Hyde*, 115 Ga. App. 836 (156 SE2d 106) (1967); *City of Fitzgerald v. Newcomer*, 162 Ga. App. 646 (291 SE2d 766) (1982)), and application of a statute's terms to undisputed facts is a question of law. *Gold Kist v. United States*, 339 FSupp. 1249, aff'd *ICC v. Gold Kist*, 409 U. S. 808 (93 SC 106, 34 LE2d 67); *American Trucking Assn. v. Gold Kist*, 409 U. S. 808 (93 SC 106, 34 LE2d 67); and *Refrigerated Transport Co. v. Gold Kist*, 409 U. S. 808 (93 SC 106, 34 LE2d 67) (1971).

Also it is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning. See, inter alia, *Dukes v. Ralston Purina Co.*, 127 Ga. App. 696 (194 SE2d 630) (1972); *Clark v. Fireman's Fund Ins. Co.*, 131 Ga. App. 809 (207 SE2d 222) (1974); *Hinson v. Ga. State Bd. of Dental Examiners*, 135 Ga. App. 488 (218 SE2d 162) (1975); *Continental Ins. Co. v. Echols*, 145 Ga. App. 112 (243 SE2d 88) (1978); *Brady v. Housing Auth. of Atlanta*, 165 Ga. App. 335 (300 SE2d 547) (1983); *DeWaters v. Atlanta*, 169 Ga. App. 41 (311 SE2d 232) (1983).

It appears that Curlee was in Kapp's home for the short time necessary to meet and get ready to depart on the fishing trip. Assuming *arguendo* that Curlee was a guest in the home for this brief period, his status as such a guest in the home would not continue indefinitely, through a series of places, times and geographical locations, including presence on the boat where the injury occurred. There has been no allegation or evidence that the boat at any time or in any form served as a homeplace or residence for Kapp.

The court is well-aware that an underlying purpose of the Uniform Commercial Code is to broaden, within the framework provided, the protection of warranties beyond the original notion of privity of contract (*Chastain v. Fuqua Indus.*, 156 Ga. App. 719 (275 SE2d 679) (1980)); however, the legislature clearly did not intend to so broaden such protection that it would functionally obliterate the very concept of privity.

Our legislature has adopted the most restrictive of the three "privity" alternatives proposed by the drafters of the Uniform Commercial Code. It could have chosen a less restrictive alternative, including the abolition of any requirement of privity, but it did not do so.

This enumeration of error is without merit.

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED JANUARY 29, 1985 —
REHEARING DENIED FEBRUARY 28, 1985 — 

*James G. Williams, Richard A. Brown, Jr., John E. Bumgartner,* for appellant.
*Wallace E. Harrell, Philip R. Taylor, Randall A. Jordan, Timothy Harden III, Mark J. Bujold,* for appellees.