**Derrick BARNETT, as Natural Parent and Guardian of Derrian J. Barnett, Plaintiff,**

v.

**LEISERV, INC., d/b/a Circus World Pizza, Defendant,**

v.

**ROYAL CUP, INC., and Frankie Roberts, Third–Party Plaintiff.**

Civil Action No. 1:95–CV–2588–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 1997.

Thomas F. Jones, Kimberly Miree Washington, Atlanta, GA, for Derrick Barnett.

Ronald Luis Reid, James W. Hagan, Alston & Bird, Atlanta, GA, for Leiserv, Inc.

Arthur H. Glaser, Drew Eckl & Franham, Atlanta, GA, Phillip Edward Friduss, Sullivan Hall Booth & Smith, Atlanta, GA, for Royal Cup, Inc.

Frederick Mills Valz, III, Webb Carlock Copeland Semler & Stair, Atlanta, GA, for Frankie Roberts.

## *ORDER*

FORRESTER, District Judge.

This products liability action is before the court on Defendant's motion for summary judgment [19–1] and the motion of counsel for Plaintiff to withdraw [18–1].

## I.  STATEMENT OF CASE

### A.  *Procedural History*

Plaintiff Derrick Barnett commenced this action in his capacity as natural parent and guardian of his son Derrian J. Barnett against Defendant Leiserv, Inc., d/b/a Circus World Pizza in the State Court of Fulton County, Georgia, on or about September 6, 1995.  Based upon an accident in which a hot cup of coffee was spilled on Derrian, Plaintiff sets forth three causes of action under Georgia law:  (1) strict liability for defectively manufactured coffee under the provisions of § 402A of the Restatement (Second) of Torts, (2) breach of implied warranty of merchantability, and (3) breach of implied warranty of fitness for particular purpose.  Furthermore, Plaintiff is seeking punitive damages.  After removing the action to United States District Court in the Northern District of Georgia based upon diversity jurisdiction, Defendant Leiserv, Inc., filed a third-party complaint against Defendant Royal Cup, Inc., and Frankie Roberts seeking full indemnification for attorneys' fees and sums paid pursuant to settlement or judgment on Plaintiff's claims.

On May 20, 1996, approximately one week after the close of discovery, Thomas J. Jones, who has represented Plaintiff through the duration of this litigation, moved to withdraw as counsel [18–1].  Defendant Leiserv subse-

quently filed a motion for summary judgment [19–1]. The third-party defendants both have indicated to the court that they do not oppose the summary judgment motion [23–1, 25–1]. In a letter dated June 7, 1996, Mr. Barnett outlined his difficulties in obtaining new counsel after Mr. Jones notified him of his intent to withdraw, voiced concern about his immediate need to respond to the pending summary judgment motion, and requested that this court deny the motion to withdraw. Mr. Jones, however, did file on behalf a Plaintiff a brief in opposition to Defendant's summary judgment, a response to Defendant's Statement of Undisputed Facts, and Plaintiff's affidavit prepared after Plaintiff's letter [24–1].

### B. Statement of Undisputed Facts [1]

#### 1. The Accident

On March 4, 1995, Plaintiff Derrick Barnett and his wife Jassundra Barnett ("Mr. and Mrs. Barnett") brought their five children to Circus World Pizza in Duluth, Georgia, in honor of their son Derrian's third birthday. At Circus World, Frankie and Inez Roberts and their two children joined the Barnetts' celebration. Frank Roberts ("Mr. Roberts") is Derrian's godfather. Six of the seven children present at the birthday party were five-years-old or younger. Aaron Byrd, a teenage friend of the two families, also came to the birthday party.

When the Barnetts arrived, Mr. Roberts was already at Circus World and was in the midst of drinking a cup of coffee that he had purchased at the concession stand. Mr. Roberts has indicated that he did not experience any problems with the temperature of that cup of coffee. The children initially played while the adults were assembled in a separate area set aside for dining at Circus World. After Mrs. Barnett prepared one of the long picnic-style bench tables, the seven children joined the adults at the table in order to eat pizza and cake and to celebrate Derrian's birthday. Afterwards, both Mr. Roberts' daughter and Derrian climbed up into Mr. Roberts' lap. Mr. Roberts then gave money to Aaron to buy a second cup of coffee for him. Despite the fact that children were running around and Derrian was in his lap, Mr. Roberts did not take any precautions against spilling the coffee.

Mr. Roberts had his left arm around Derrian who sat "close to the table" on Mr. Roberts' left knee. On the opposite side of the table, Mr. Barnett sat directly across from Derrian and Mr. Roberts while Mrs. Barnett stood to her husband's side. The adults talked as Mrs. Barnett cleaned the table. Mr. Barnett has admitted that he was not paying attention to Derrian. Yet, a number of drink cups were left within Derrian's reach on the table.

Both Mr. Barnett and Mr. Roberts had spilled coffee upon themselves in the past and were aware that hot coffee could burn. Furthermore, the Barnetts understood that children were more susceptible to burns from hot liquids than adults might be. Mr. Roberts and the Barnetts also knew that children have a tendency to grab cups. Mr. Roberts even admitted that Mr. Barnett had once told him that Derrian had such a tendency.

Upon returning to the area, however, Aaron set the cup of coffee that he bought for Mr. Roberts on the table in front of Mr. Roberts and six inches to one foot from the table's edge. Circus World had not provided any warnings regarding the brewing or holding temperature of the coffee served or the potential danger arising from the coffee.[2] Mr. Roberts and the Barnetts noticed that the coffee cup was within Derrian's reach. Mr. Barnett also saw steam rising from the

---

1. Although Plaintiff did submit a separate response that contested some of the statements found within Defendant's Statement of Undisputed Material Facts, Plaintiff did not fully comply with Local Rule 220–5(b)(2) by submitting a separate and concise statement of undisputed material facts in opposition to the motion for summary judgment. Pursuant to L.R. 220–5(b)(2), the court therefore has deemed as admitted all of the material facts that were contained in Defendant's Statement that Plaintiff has failed to address or traverse.

2. Plaintiff's Statement of Material Facts To Which There Exists a Genuine Issue To Be Tried [hereinafter "Plaintiff's Statement of Facts"] at ¶ 3.

cup and knew the cup of coffee was hot.[3] Neither parent told Mr. Roberts to be careful or took any other precautions to protect Derrian from the hot coffee. With Derrian still sitting on his left knee, Mr. Roberts used both of his hands to open a sugar packet. At this point, the coffee tipped over and spilled on Derrian's leg and foot. In light of the admitted fact that no Circus World employee was involved in spilling the coffee,[4] either Mr. Roberts or Derrian was responsible for spilling the coffee. Mr. and Mrs. Barnett have testified that Derrian suffered second degree burns on his right ankle, leg and foot, which healed within a few weeks after the accident.

### 2. The Coffee Maker

The "brewing temperature" for a coffee maker is the temperature at which water and coffee grinds are blended together to brew the coffee. A proper brewing temperature is necessary to guarantee an exact extraction of flavor from the coffee grinds. The standard brewing temperature for coffee makers in the coffee service industry, including the Bunn Omatic STS F–15 model, ranges from 195 to 205 degrees Fahrenheit. The "holding temperature" for a coffee maker is the temperature of the coffee after brewing and before serving. As with the brewing temperature, a proper holding temperature is required in order to maintain the quality of the taste of the coffee. The standard holding temperature for coffee makers in the coffee service industry, including the Bunn Omatic STS F–15 that was involved in the accident, ranges from 175 to 185 degrees Fahrenheit. Third-party Defendant Royal Cup, Inc. [hereinafter "Royal Cup"], has a policy of maintaining its brewing and holding temperatures of the coffee makers that Royal Cup services within the above-referenced standard temperatures.

A few days before Circus World came into operation in October 1994, its manager leased a Bunn Omatic STS F–15 coffee maker from Royal Cup. As part of the arrangement, Circus World used the ground coffee beans and coffee filters that Royal Cup supplied. In addition, a Royal Cup representative instructed the Circus World manager, who in turn trained the employees, about how to prepare and blend the coffee in the coffee maker. At the time Royal Cup delivered the coffee maker to Circus World, a Royal Cup representative set the brewing temperature so that it was in the 195 to 205 degree range. The representative also tested and determined that the holding temperature of the coffee maker was within the 175 to 185 degree range. Circus World employees did not have access to any mechanisms to adjust these temperatures.

All of the coffee that Circus World sold to its patrons came from this Royal Cup coffee maker and was made according to the company's specifications. In addition, a Royal Cup representative tested the coffee maker no longer than three days after Derrian's accident and determined that the coffee maker was brewing and holding coffee in accordance with Royal Cup's standard temperatures. A Circus World manager, who had drank coffee from the coffee maker at issue every day that she had been on duty during her employment, testified that every cup of coffee she had consumed there had been brewed and held at the same respective temperatures and did not increase in temperature on or after March 4, 1995. Finally, Circus World had not received any complaints regarding the temperature of its coffee or had any notice of an occasion on which a customer had been burned after spilling its coffee prior to Derrian's accident on March 4, 1995.

## II. DISCUSSION

### A. Motion to Withdraw

The court appreciates Plaintiff's possible concerns about whether his counsel might put forth his best efforts after notifying Plaintiff of his intent to withdraw as counsel.

---

**3.** Although the Barnetts knew the coffee was hot, they dispute that they were aware that the coffee was hot enough to cause the type and severity of burns that Derrian suffered. Plaintiff's Statement of Facts at ¶ 1.

**4.** Defendant Leiserv's Statement of Material Facts To Which There Is No Genuine Issue To Be Tried [hereinafter "Defendant's Statement of Facts"] at ¶ 9.

Yet, as the materials that his counsel prepared and submitted in opposition to Defendant's motion for summary judgment were not patently frivolous, the court has considered the merits of those responses. Because the record indicates that attorney Thomas J. Jones has substantially complied with the requirements of Local Rule 110–5, this court GRANTS his motion to withdraw as counsel for Plaintiff [18–1].

### B. Motion for Summary Judgment

Plaintiff's complaint seeks to recover damages based on the theories of strict liability for manufacture of a defective product, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. In addition, Plaintiff seeks punitive damages and attorney's fees.

Defendant moves for summary judgment[5] as to Plaintiff's strict liability claim on the basis that Leiserv is only the "product seller" of the coffee and not the manufacturer as O.C.G.A. § 51–1–11 requires. Even if this court were to determine that Leiserv was the "manufacturer" under the statute, Defendant asserts that summary judgment is still appropriate because Plaintiff has not met his burden to show that the coffee was defective and the peril of using Defendant's product was open and obvious.[6] Defendant seeks summary judgment as to Plaintiff's breach of warranty claims because no privity exists between Defendant and Plaintiff.

In opposing the motion for summary judgment, Plaintiff first contests whether the dangers were "open and obvious" in absence of any warning of the potential dangers of the excessively hot coffee. According to Plaintiff, his knowledge that coffee was served at a warm temperature did not mean that Plaintiff knew that the product could cause second degree burns to a child. Second, Plaintiff asserts that Plaintiff falls within the exception to the privity rule under O.C.G.A. § 11–2–318 so that Plaintiff has stated a claim for relief under his breach of warranty theories.

#### 1. Strict Liability Claims

Plaintiff alleges that Defendant is strictly liable for Derrian's injuries resulting from the spilled coffee.[7] This court does not agree. Under Georgia law, a mere "product seller" may not be held strictly liable for a defective product.[8] O.C.G.A. § 51–1–11.1(b). A "product seller" is defined as:

a person who, in the course of a business conducted for the purpose, *leases or sells*

---

5. Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1536 (11th Cir.1988). Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. To survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to his case so as to create a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Brown*, 848 F.2d at 1537.

6. To the extent that Plaintiff's complaint is construed to assert a negligence claim, Defendant also moves for summary judgment on the following grounds: (1) the peril was open and obvious, (2) in its capacity as a mere retailer of the coffee, Defendant did not owe a duty to inspect or discover the defect, and (3) the proximate cause of the injury was Mr. Roberts and the Barnetts' inattention and negligent failure to take precautionary measures to protect the child. Inasmuch as the complaint does not appear to allege a negligence claim and Plaintiff has not addressed these issues within his brief opposing the summary judgment motion, the court does not find that Plaintiff has stated a claim or is entitled to relief on this theory.

7. Claims of product liability based on the theory of strict liability are brought pursuant to O.C.G.A. § 51–1–11(b).

8. Although Plaintiff may be proceeding under the theory that Leiserv was acting as the "ostensible manufacturer" of the coffee by selling the product in its place of business, *see, e.g., Pierce v. Liberty Furniture Co.*, 141 Ga.App. 175, 178–79, 233 S.E.2d 33 (1977), Georgia law no longer recognizes a strict liability cause of action against an ostensible manufacturer. O.C.G.A. § 51–1–11.1; *see also Buford v. Toys R' Us, Inc.*, 217 Ga.App. 565, 566, 458 S.E.2d 373 (1995).

and distributes; installs; *prepares; blends; packages;* labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce. . . .

O.C.G.A. § 51–1–11.1(a) (emphasis added).

■ The undisputed record indicates that all of the coffee that Leiserv sold to its Circus World customers originated from the Royal Cup coffee maker and was made according to Royal Cup specifications, including the temperature of the coffee. Furthermore, none of Leiserv's employees had the ability to adjust the machine's brewing or holding temperature or have any other input into the preparation of the coffee. Thus, the court is convinced that Leiserv's role was limited to one of "product seller" in which Leiserv leased the coffee maker and merely prepared, blended, packaged and sold the coffee pursuant to Royal Cup's directions. *Cf. Nelson v. C.M. City, Inc.,* 218 Ga.App. 850, 852, 463 S.E.2d 902 (1995) (party who is an active participant in the design or specification of product is considered a "manufacturer" of the product), *rev'd on other grounds,* 267 Ga. 390, 478 S.E.2d 769 (1996). In the absence of evidence or argument that Leiserv was the actual manufacturer of the coffee, Defendant Leiserv may not be held strictly liable for Derrian's injuries and Plaintiff's claim fails as a matter of law.

### 2. *Breach of Warranty Claims*

■ Under Georgia law, privity is required to recover in actions for breach of express or implied warranties with certain exceptions. *Keaton v. A.B.C. Drug Co.,* 266 Ga. 385, 386, 467 S.E.2d 558 (1996); *Ellis v. Rich's, Inc.,* 233 Ga. 573, 577, 212 S.E.2d 373 (1975); *Cobb Co. School Dist. v. MAT Factory, Inc.,* 215 Ga.App. 697, 702, 452 S.E.2d 140 (1994). Thus, reliance upon the warranties cannot extend beyond the first consumer or buyer or run with the product. *See Stewart v. Gainesville Glass Co., Inc.,* 131 Ga.App. 747, 751–52, 206 S.E.2d 857 (1974), *aff'd,* 233 Ga. 578, 212 S.E.2d 377 (1975). In the case *sub judice,* the facts are undisputed that Plaintiff did not purchase the coffee at issue

from Circus World. In the absence of privity between Plaintiff and Defendant, Plaintiff therefore relies upon the third party beneficiary exception and the relationship between Plaintiff and Mr. Roberts. Yet, the court does not agree that the exception applies.

■ This exception, which is set forth in O.C.G.A. § 11–2–318, provides in relevant part that:

A seller's warranty whether express or implied extends to any natural person who is *in the family* or household *of his buyer* or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty.

*Id.* (emphasis supplied). Unless evidence exists to the contrary, the court must assign these words "their ordinary, logical, and common meaning." *Curlee v. Mock Enterprises, Inc.,* 173 Ga.App. 594, 600, 327 S.E.2d 736 (1985) (citations omitted).

■ In the instant case, the facts clearly indicate that Defendant sold the coffee to a teenage family friend of Plaintiff, who was in turn purchasing the coffee for Mr. Roberts, another family friend of Plaintiff, for consumption in a public restaurant. Any implied warranties regarding the safety of the coffee in terms of its temperature or patent or latent defects would have been extended first to the teenager, who at a minimum was responsible for carrying the hot beverage. Plaintiff has not demonstrated that he was related to this original purchaser of the coffee. Thus, the court's first concern is that a fatal gap in privity exists between the initial buyer and Plaintiff. *Cf. Chaffin v. Atlanta Coca Cola Bottling Co.,* 127 Ga.App. 619, 620, 194 S.E.2d 513 (1972) (after plaintiff's daughter bought allegedly soapy-like bottle of Coca Cola that plaintiff consumed, plaintiff could only recover from retailer under third-party beneficiary exception and not against the manufacturer based on gap in privity).

In addition, the court is not entirely convinced that the relationship between Mr. Roberts and Plaintiff was sufficient to invoke the statutory third-party beneficiary exception. Although the facts are not directly

**696**

analogous, the *Curlee* case provides an illustrative example of the scope of the third-party beneficiary exception. The plaintiff in *Curlee* asserted that he should be considered a "houseguest" of the buyer of an allegedly defective handgun under the terms of the third-party beneficiary exception based upon the fact that he met the buyer at his house before departing together for a fishing trip. *Curlee,* 173 Ga.App. at 600, 327 S.E.2d 736. During the shark-fishing excursion, the handgun discharged requiring the amputation of the plaintiff's leg. *Id.* at 594, 327 S.E.2d 736. The court acknowledged that the Georgia Legislature "has adopted the most restrictive of the three 'privity' alternatives" possible in providing the statutory exception at issue. *Id.* at 600, 327 S.E.2d 736. Construing the terms narrowly, the court in *Curlee* therefore determined that even if the plaintiff were a guest for the short time period before their departure, "his status as such a guest in the home would not continue indefinitely, through a series of places, times and geographic locations, including presence on the boat where the injury occurred." *Id.*

In this light and in the absence of more compelling authority, this court is also unwilling to construe the third-party beneficiary exception broadly to apply to the circumstances of this case. The facts here merely indicate that an adult met family friends and their son, who happened to be his godson, at a public restaurant where an accident occurred. Plaintiff clearly was not a member of Mr. Roberts' family or household to fall within the scope of the third-party beneficiary exception. *See also Stewart,* 131 Ga.App. at 752, 206 S.E.2d 857 ("The mere fact that he would benefit by performance of the warranty does not make him a third-party beneficiary.").

Thus, because Plaintiff is not in privity with the buyer of the coffee, Defendant is entitled to judgment as a matter of law.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED [19–1]. The motion of counsel for Plaintiff to withdraw is also GRANTED [18–1].