75577. BRANTON v. DRAPER CORPORATION.
(366 SE2d 206)

BIRDSONG, Chief Judge.

Houston Branton brings this appeal from the grant of summary judgment to appellee Draper Corporation. Appellant has filed only selected portions of the record for inclusion in this appeal. Not included are the complaint and the answer. Hence, we have difficulty in determining the precise issues alleged as a basis for this action. The pretrial order describes the complaint as seeking recovery of "medical expenses, lost services, loss of incidental expenses, loss of conjugal rights, support and consortium" by Branton, for injuries to his wife, Willie Ruth Branton, alleged to have been caused by "the negligent, wanton, careless decision of the Draper Corporation to design, manufacturer [sic] and install unreasonably dangerous components on its looms sold to the Bibb Company. . . ." Mrs. Branton worked as a weaver, i.e. a loom operator, for the Bibb Company in its Columbus, Georgia mill for over 27 years. On April 20, 1982, when she walked between two operating looms, her apron was caught on an exposed flywheel and she was dragged into the loom and injured. She was hospitalized and ultimately her knee had to be replaced. She collected workers' compensation for her injury. On February 26, 1986, almost

four years after her injury, her husband filed this action.

Appellee, Draper Corporation, moved for summary judgment. Appellant proceeded on the theory that Draper had defectively designed and manufactured its looms by having an exposed, rotating flywheel with spokes and set-screws mounted on an 8-inch drive-shaft extension, without a shield or guard, and these defects caused the injury to Mrs. Branton. Appellee contends there was no defective design, and if the design was dangerous, it was open, obvious, and patent to Mrs. Branton, and the cause of the injury was the negligence of Mrs. Branton in wearing a long apron which was tied about her body. Further, appellee asserted the defenses of the statute of limitations, assumption of risk, and contributory negligence, inter alia. The trial court granted appellee's motion for summary judgment, holding that a manufacturer is not under a duty to make a machine accident-proof and is under no duty to warn against a patent peril. The court also found that Branton's claim for lost wages, lost earning capacity and medical expenses for his wife's injury were not properly includable within the consortium claim and were barred by the statute of limitations. Branton brings this appeal. *Held*:

1. "A loss of consortium has been defined as a loss of the love, society, companionship, and comfort of the wife or husband." *Brown v. Hauser*, 249 Ga. 513, 514 (292 SE2d 1); see also *Smith v. Tri-State Culvert Mfg. Co.*, 126 Ga. App. 508, 510 (191 SE2d 92). A claim for "loss of consortium" does not include lost wages, medical expenses, or loss of earning capacity. See generally OCGA § 51-12-4; *Blanchard v. Westview Cemetery*, 133 Ga. App. 262, 269 (211 SE2d 135), as modified 234 Ga. 540 (216 SE2d 776); *Old Dominion Freight Line v. Martin*, 153 Ga. App. 135 (264 SE2d 585) (medical expenses). The Code provides a two-year statute of limitations for personal injuries and a four-year limitation period for loss of consortium. OCGA § 9-3-33. A claim for loss of consortium does not extend the period during which damages may be asserted for physical injuries to the person. *Central of Ga. R. Co. v. Harbin*, 132 Ga. App. 65 (1) (207 SE2d 597). The trial court properly ruled that these claims were barred by the two-year statute of limitations.

2. Appellant contends the trial court erred "in ruling that the Open and Obvious Rule is an absolute defense and that comparative negligence is not an issue in an action for compensatory damages based on unrebutted evidence of defendant's gross negligence or conscious indifference to the consequences." Appellant has failed to direct our attention to the record where this ruling can be found and our review of the record has failed to uncover such ruling.

The trial court held "that manufacturers are not under a duty to make a machine accident proof and have no duty to guard against injury from a patent peril. Under Georgia law, if the machine func-

tions properly for the purpose for which it was designed without any latent defect, and if its functioning creates no danger or peril that is not known to [the] user, the manufacturer has produced a machine that is reasonably safe." (Emphasis deleted.) The court reasoned that "because the alleged design defect was not latent but was in plain view, and . . . because the functioning of the loom created no danger or peril not known to the user" appellee Draper was entitled to summary judgment. This is the general law of this state. " 'If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. . . . [H]e is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. . . . In other words, the manufacturer is under no duty to render a machine or other article "more" safe — as long as the danger to be avoided is obvious and patent to all.

" 'To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been — or, in our view, may be — imposed by judicial decision. Suffice it to note that, in cases dealing with a manufacturer's liability for injuries to remote users, the stress has always been upon the duty of guarding against *hidden* defects and of giving notice of *concealed* dangers.' " *Stovall & Co. v. Tate*, 124 Ga. App. 605, 610-611 (184 SE2d 834); accord *Trailmobile v. Smith*, 181 Ga. App. 134, 135 (351 SE2d 528); *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 848 (321 SE2d 353), aff'd 254 Ga. 201 (326 SE2d 436); *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (319 SE2d 470); *Giordano v. Ford Motor Co.*, 165 Ga. App. 644, 645 (299 SE2d 897); *Vance v. Miller-Taylor Shoe Co.*, 147 Ga. App. 812 (2) (251 SE2d 52); *Poppell v. Waters*, 126 Ga. App. 385, 388 (190 SE2d 815). "Conceivably, any manufactured good is capable of inflicting injury; and, indeed, the use of certain products, such as, for example, firearms, powersaws, and perhaps motorcycles, may be considered intrinsically dangerous. Recognizing this fact, we held in *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44 (248 SE2d 15) (1978), that a manufacturer has no duty to warn of obvious common dangers connected with the use of a product. . . . Although the 'patent danger rule' has its roots in a New York decision [which is no longer followed] it is still viable in this state." *Stodghill v. Fiat-Allis Constr. Machinery*, 163 Ga. App. 811, 813 (295 SE2d 183).

Assuming arguendo there was a design defect in this loom, which was manufactured by appellee, from an exposed flywheel without a

safety guard, Mrs. Branton had been working on the same type of loom at the same company for 27 years, and the alleged peril or danger, caused by the unguarded rotating flywheel, was clearly obvious and patent. She had been warned by management to be careful when walking between the looms, i.e., by the flywheel, she was aware of the location of the flywheel and knew not to come into contact with it when it was rotating. The record contains a "Job Analysis" sheet, purportedly bearing the signature of "Ruth Branton," on which a job hazard is listed as involving the "handwheel," and the action required of the worker to avoid injury is: "Don't wear long aprons and always use a safety pin instead of tying." Mrs. Branton admitted she wore an apron that extended to a point just above the knee and that the apron was tied around her waist. It was this apron that contacted the loom flywheel, and it was the fact that the apron was "looped around [her] waist," rather than pinned, that caused her to be pulled into the flywheel and injured. Hence, our Supreme Court has held that " ' "[i]f the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is barred from recovery." ' " *Ford Motor Co. v. Lee*, 237 Ga. 554, 555 (229 SE2d 379); *Center Chem. Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580).

3. Appellant argues that where a "party's negligence is wilful and wanton, he is debarred from pleading that the other party was negligent or was a wrongdoer." (Emphasis deleted.) Aside from the semantics involved, this is a correct statement of law. We have pointed out that " 'we disapprove [of] the use of the expression [wilful and wanton negligence]; for wilfulness and wantonness are so far the opposites of negligence as to make the expression "wilful and wanton negligence" misleading. . . .' [Negligence] . . . concerns a degree of care or absence thereof. Wilful and wanton conduct, on the other hand . . . is conduct 'such as to evidence a wilfull intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent. . . .' " *Truelove v. Wilson*, 159 Ga. App. 906, 908 (285 SE2d 556); accord *Central of Ga. R. Co. v. Moore*, 5 Ga. App. 562, 564 (63 SE 642). "It is inconsistent to compare wilfulness and neglect. [Cit.] The terms are antagonistic in meaning. [Cit.]" *Nunn v. Taylor*, 177 Ga. App. 44, 46 (338 SE2d 453). However, we must candidly admit that our appellate courts have consistently used such a term as "wilful and wanton negligence." For example, the court, in *Lowe v. Payne*, 156 Ga. 312, 314-315 (118 SE 924), stated: "If the negligence of the employees of the railroad company is so gross as to amount to wanton and willful negligence, such want of ordinary care by the person injured or killed to avoid the consequences of it would be no bar to a recovery for the injury."

A better statement of the rule is found in *Western &c. R. Co. v. Bailey*, 105 Ga. 100, 101 (31 SE 547): "It may be also stated as a general rule, that the [railroad] company owes no duty to a trespasser upon its track, except to do him no wilful or wanton injury. A trespasser is a wrong-doer, and it is a general principle of jurisprudence that the courts will not aid a wrong-doer. The fact that the trespasser is a wrong-doer does not, however, justify malicious, wanton, or wilful maltreatment of him; and the failure to use reasonable care to avoid injury to him, after the discovery of his danger, may sometimes be sufficient evidence of wantonness or wilfulness. . . . If, after discovering the danger to the trespasser and his inability to escape, the company fails to exercise reasonable care, it will be liable, if the exercise of such care would have prevented the injury; and *although there is a clear distinction between negligence and wilfulness, yet a reckless and wanton disregard of consequences, evincing a willingness to inflict injury, may amount to wilfullness, although there is no direct proof of actual intention to inflict the injury complained of.*" (Emphasis supplied.)

These pronouncements may appear to be in conflict with each other, and with OCGA § 51-11-7, which provides: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." The Supreme Court in *Carr v. John J. Woodside Storage Co.*, 217 Ga. 438, 440 (123 SE2d 261) referred to the rule stated in *Lowe* and commented: " 'The liability is a harsh one, but it is just, where the facts of the case warrant it. The court, in charging the jury upon the subject, should make it plain that [this bar to pleading plaintiff's own negligence] is never applicable unless the defendant's conduct was such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent.' " It is clear that the facts of this case do not warrant the application of this rule barring the defendant from pleading the plaintiff's own lack of ordinary care, as stated in *Lowe*, supra, for the record is devoid of any act of appellee evincing a wilful intent to inflict injury, or such reckless or indifference to consequences to find wantonness equivalent in spirit to actual intent. This enumeration is without merit.

4. Appellant alleges the trial court failed to consider the doctrine of distraction and its application to this case. First, we cannot discern from the trial court's order whether it did or did not consider the "distraction doctrine." See *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348 (349 SE2d 241). Secondly, those portions of the record cited to us by appellant do not show a basis in fact for application of this doctrine. Lastly, we have found no portion of the record where

appellant asserted the distraction doctrine to the court as a viable issue. This enumeration is lacking in merit.

5. We find no reversible error in the trial court stating its findings of fact and conclusions of law, rather than merely issuing an order granting summary judgment to appellee. Neither do we find reversible error in the trial court's order by its failure to use the standard phraseology in granting summary judgment that it considered the evidence in the light most favorable to the respondent, and gave the respondent the benefit of all reasonable doubts and favorable inferences to be drawn from the evidence, but found no material issue of fact requiring submission of the case to a jury. In the absence of evidence to the contrary, it will be presumed that judges, as public officials, properly discharge their duties. *Bank of Clearwater v. Kimbrel*, 240 Ga. 570, 572 (242 SE2d 16). As there is no evidence to the contrary, we will presume the trial court applied the correct legal standard in ruling on the motion for summary judgment.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 12, 1988.

*B. Randall Blackwood*, for appellant.
*Karen L. Jenkins, G. Michael Banick*, for appellee.