## A02A1177. INFINITE ENERGY, INC. v. GEORGIA PUBLIC SERVICE COMMISSION et al.
### (572 SE2d 91)

JOHNSON, Presiding Judge.

This is an appeal from a superior court judgment affirming a decision of the Georgia Public Service Commission. The appeal is without merit, and we therefore affirm the judgment of the superior court.

Atlanta Gas Light Company is an electing distribution company under the Natural Gas Competition and Deregulation Act.[1] As a distribution company, Atlanta Gas Light does not sell natural gas directly to customers, but provides the distribution system used by certified marketers to deliver gas to their customers.

The marketers estimate how much gas their respective customers will use and then supply Atlanta Gas Light with gas for delivery to the customers. But because marketers cannot predict exactly how much gas their customers will use, they sometimes supply less gas than their customers actually consume. Their customers then end up using gas that was delivered by another marketer. But regardless of who supplied the gas, the marketers charge their customers for the gas they actually use. This means that some marketers sell gas they did not tender to Atlanta Gas Light, while others tender gas that they did not sell.

Consequently, there must be a process in place to reconcile, or "true up," the amount of gas a marketer delivers to Atlanta Gas Light with the actual amount of gas used by that marketer's customers. Without such a process, some marketers would end up subsidizing the sales of — providing free gas to — other marketers.

The Georgia Public Service Commission, which regulates Atlanta Gas Light's distribution service, addressed the need for such a true-up process. In June 1998, the Commission issued an order providing that each month Atlanta Gas Light shall be responsible for truing up the difference between a marketer's gas deliveries and its consumption. Atlanta Gas Light did not oppose a true-up process, but petitioned the Commission to reconsider several matters. On September 18, 1998, the Commission ruled on the petition, ordering that Atlanta Gas Light must perform the true-up on a quarterly, rather than a monthly, basis; that it shall recover costs of the true-up service; that it is responsible only for performing the true-up calculations and giving the results to the marketers; and that the marketers are then responsible for resolving the volume differentials amongst themselves.

---

[1] OCGA § 46-4-150 et seq.

On October 1, 1999, several marketers and Atlanta Gas Light filed a proposed methodology for resolving the volume differentials by either exchanging money or swapping gas. But marketer Infinite Energy, Inc. opposed the proposal, arguing that it should not apply retroactively. On April 5, 2000, the Commission approved the true-up settlement methodology and ordered that it apply from November 1, 1998, when marketers had commenced service. Infinite Energy moved the Commission to reconsider its order, and the Commission denied the motion.

On June 12, 2000, Infinite Energy petitioned for judicial review of the Commission's decision, arguing that the true-up methodology should not apply retroactively to November 1, 1998. The superior court affirmed the Commission's decision. Infinite Energy appeals from the court's ruling.

1. Infinite Energy contends that the trial court used the wrong standard to review the Commission's decision. Infinite Energy claims that the court improperly used a "clearly erroneous" standard of review rather than conducting a de novo review of the decision. The claim is without merit.

The appropriate standards for judicial review of agency decisions are set forth in OCGA § 50-13-19 (h), which provides:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Pursuant to this Code section, courts review agency findings of fact to determine whether they are supported by any evidence.[2] And in considering agency conclusions of law, courts conduct a de novo review.[3]

---

[2] *Municipal Elec. Auth. &c. v. Ga. Public Svc. Comm.*, 241 Ga. App. 237, 238 (1) (525 SE2d 399) (1999).

[3] Id. at 239.

In the instant case, the superior court correctly notes in its judgment that OCGA § 50-13-19 sets forth the review procedure, and that findings of fact are reviewed under the any evidence standard. The court's judgment does not state that contested conclusions of law by the Commission are subject to de novo review.

But the mere absence of those words from the court's written judgment does not mandate a finding that the court applied the wrong standard of review.[4] "The trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolving upon it by law. This court will not presume the trial court committed error where that fact does not affirmatively appear."[5]

The record here does not affirmatively show that the trial court used an improper standard to review any contested legal conclusions by the Commission. We have reviewed the court's written judgment and find nothing in it affirmatively showing that the court improperly reviewed any legal conclusions. And Infinite Energy has not pointed to any legal conclusions that it contested and which the court then failed to subject to a de novo review.

Infinite Energy does attempt to characterize the central issue considered by the court — whether Infinite Energy was on notice that marketers must resolve gas volume differentials — as a question of law. But generally, notice is a question of fact to be determined according to the nature and circumstances of each case.[6] Under the circumstances of this case, whether the gas marketers were on notice that they must resolve gas volume differentials was a question of fact. Because there is no evidence in the record affirmatively showing that the court applied the wrong standard of review, we will not presume error.[7]

2. Infinite Energy argues that the superior court erred in not finding that the Commission's order of April 5, 2000, arbitrarily and capriciously reversed the Commission's order of September 18, 1998, by imposing a methodology for resolving the volume differentials between the marketers. The argument is without merit because the Commission did not reverse its prior order.

The order of September 18, 1998, plainly notified the marketers that there would be a quarterly true-up, and that they would then

---

[4] See *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (5) (440 SE2d 517) (1994) (even though trial court's order failed to state the applicable clear and convincing standard of review, there is no reversible error because the court is presumed to know the law).

[5] (Citations and punctuation omitted.) Id.

[6] See, e.g., *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25 (1) (537 SE2d 165) (2000) (whether insured gave notice a question of fact); *Intl. Multifoods Corp. v. Nat. Egg Products*, 202 Ga. App. 263, 266 (4) (414 SE2d 253) (1991) (notice of warranty breach a question of fact).

[7] See *Branton v. Draper Corp.*, 185 Ga. App. 820, 825 (5) (366 SE2d 206) (1988).

have to resolve the difference between the amount of gas they supplied and the amount consumed. The September 18 order provided that Atlanta Gas Light is responsible only for performing the true-up calculations and providing those results to the marketers. The order then expressly stated: "The marketers will then be responsible for resolving the volume differentials among themselves." While this order did not impose a particular true-up methodology, it clearly required the marketers to true up their volume differentials.

Marketers subsequently asked the Commission to adopt a proposed methodology for resolving the differentials. The Commission's order of April 5, 2000, did just that. The order did not reverse the September 18 order, and in no way changed the already established requirement that marketers true up their volume differentials. Rather, the order simply established a specific method for the marketers to resolve the volume differentials.

As the Commission stated in its April 5 order:

> The purpose of this Order is not to decide whether there should be a true-up. The Commission found that there would be a true-up in its September 18, 1998 Partial Order on Reconsideration. The true-up is prospective from the date of the Order on Reconsideration. The purpose of this Order is merely to effectuate the true-up already ordered.

This action by the Commission was neither arbitrary nor capricious. On the contrary, the order was reasonable in that it was designed only to ensure that some marketers do not end up subsidizing other marketers. Because the Commission's order was not arbitrary or capricious, we find no error.

3. Infinite Energy's final enumeration of error is that the superior court's decision is belied by the record developed at oral argument. In support of this enumeration, Infinite Energy does not cite any evidence, but instead quotes various statements made by the judge at oral argument. None of the judge's statements are factual or legal findings; rather, they are simply portions of the colloquy between the judge and the lawyers during oral argument. Such statements by the judge are not evidence, and certainly provide no basis for finding that the court's final judgment is not supported by the record. On the contrary, we have reviewed the record and find that there is more than sufficient evidence supporting the superior court's affirmance of the Commission's decision.[8]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

---

[8] OCGA § 50-13-19 (h).

*Arnall, Golden & Gregory, Allen I. Hirsch, Henry R. Chalmers, Aaron M. Danzig*, for appellant.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Daniel S. Walsh, Assistant Attorney General, Rogers & Hardin, Robert B. Remar, Kimberly L. Myers*, for appellees.