A11A0200. MXENERGY INC. v. GEORGIA PUBLIC SERVICE COMMISSION et al.
(714 SE2d 132)

SMITH, Presiding Judge.

MXenergy Inc. appeals from a superior court judgment affirming a decision of the Georgia Public Service Commission ("the commission").[1] It did not err in so doing, and we therefore affirm the judgment of the superior court.

The dispute in this action arises from the "true up settlement process" applied to natural gas marketers by the commission, as discussed in our earlier decision of *Infinite Energy v. Georgia Public Svc. Comm.*, 257 Ga. App. 757 (572 SE2d 91) (2002):

> Atlanta Gas Light Company is an electing distribution company under the Natural Gas Competition and Deregulation Act [OCGA § 46-4-150 et seq.]. As a distribution company, Atlanta Gas Light does not sell natural gas directly to

---

[1] Under OCGA 5-6-35 (a) (1), the review of decisions of the commission does not trigger the discretionary application process.

customers, but provides the distribution system used by certified marketers to deliver gas to their customers.

The marketers estimate how much gas their respective customers will use and then supply Atlanta Gas Light with gas for delivery to the customers. But because marketers cannot predict exactly how much gas their customers will use, they sometimes supply less gas than their customers actually consume. Their customers then end up using gas that was delivered by another marketer. But regardless of who supplied the gas, the marketers charge their customers for the gas they actually use. This means that some marketers sell gas they did not tender to Atlanta Gas Light, while others tender gas that they did not sell.

Consequently, there must be a process in place to reconcile, or "true up," the amount of gas a marketer delivers to Atlanta Gas Light with the actual amount of gas used by that marketer's customers. Without such a process, some marketers would end up subsidizing the sales of — providing free gas to — other marketers.

(Footnote omitted.) Id. at 757. In *Infinite Energy*, we affirmed the superior court's decision to affirm the commission's adoption of a true up process that was proposed by Atlanta Gas Light and marketers in 1999. Id. at 758.[2] In the case before us, we address the application of that true up process to a shortfall created by the bankruptcy of a marketer.

In 2008, Catalyst Natural Gas, LLC filed for bankruptcy, at a time when it had supplied less gas than its customers actually consumed, and thus, as we discussed in *Infinite Energy*, supra, 257 Ga. App. at 757, had sold gas to its customers that it had not tendered to Atlanta Gas Light. The superior court and the parties refer to this as a "short" position on the part of the marketer. Catalyst's "short" position meant that, ordinarily, it would pay other marketers in a "long" position for the gas imbalance, but "[a]lthough many of the long marketers have filed proof of claims against Catalyst in bankruptcy court, as unsecured creditors it is unlikely that there will be any appreciable distribution of funds to them."

Atlanta Gas Light and eight marketers filed with the commis-

---

[2] To the extent that MXenergy argues that the true up process is flawed, inaccurate, "infirm," or disadvantageous, those arguments were either addressed in *Infinite Energy*, supra, or are not before us because MXenergy has not contended that the true up process was itself unlawful or was erroneously applied in this case. We note that the commission has modified the true up process from time to time at the request of Atlanta Gas Light and marketers.

sion a "Joint Petition of Marketers for Recovery of the Catalyst Shortfall." In that petition, the marketers asserted that Catalyst's "abrupt exit from the Georgia natural gas market left it owing the True-Up participants for several months' worth of gas imbalances" and that "long" marketers were "left without any means through the approved process to recover their respective losses short of raising prices to their customers or absorbing the loss." Arguing that other methods would impose costs directly on customers or on only some marketers, they requested that, in the exercise of the commission's discretion, certain penalties assessed against marketers and certain profit-sharing monies be redirected from the universal service fund or USF[3] "to resolve the Catalyst shortfall recovery issue" by paying the marketers for Catalyst's outstanding shortfall.

After considering various responses to the petition in administrative session, the commission determined that it would temporarily divert discretionary funds from the universal service fund to Atlanta Gas Light and the marketers, to the extent of sixty percent of the Catalyst shortfall. Upon motion for reconsideration by MXenergy and one other marketer, asserting for the first time that a constitutional "takings" issue was implicated, the commission declined to reconsider its order, noting:

> The true-up process was approved by the Commission, however, it was designed and implemented by agreement between the marketers and AGLC [Atlanta Gas Light]. The record in this case is clear that the marketers chose to enter the free market gas industry established in Georgia. The marketers, along with AGLC, designed and implemented a reconciliation process for nomination and delivery of natural gas. The Catalyst shortfall is the result of the competitive business decisions in a free market-based economy not the taking of private property for public use.

MXenergy appealed to the superior court, contending that the commission's failure to compensate it for one hundred percent of its share of the Catalyst shortfall amounted to a "taking" in violation of the Georgia and United States Constitutions. U. S. Const. amend. V; Ga. Const. of 1983, Art. I, Sec. III, Par. I. After receiving briefs and conducting a hearing, the superior court concluded that the true up of the shortfall caused by the Catalyst bankruptcy was a consequence of that bankruptcy rather than a taking of MXenergy's property, and further concluded that the regulatory policy decision of the commis-

---

[3] See OCGA § 46-4-161.

sion to override its staff recommendation and allocate some funds to MXenergy from the universal service fund was supported by the evidence, was within the discretion of the commission, and was not arbitrary or capricious. We agree, for the reasons stated below.

1. We first consider MXenergy's contention that the trial court applied an incorrect standard of review. As we noted in *Infinite Energy*, supra, in response to the same contention:

> The appropriate standards for judicial review of agency decisions are set forth in OCGA § 50-13-19 (h), which provides:
>> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
> Pursuant to this Code section, courts review agency findings of fact to determine whether they are supported by any evidence. And in considering agency conclusions of law, courts conduct a de novo review.

(Citations, punctuation and footnotes omitted.) *Infinite Energy*, supra, 257 Ga. App. at 758 (1). Here, as in *Infinite Energy*, we presume that the trial court knows the law and faithfully performs its duties, and we do not presume that the trial court erred in its application of the appropriate standard simply because its order does not contain the words "de novo review." Id. at 759 (1).

The record contains no showing that the trial court applied an incorrect standard to any legal conclusions made by the commission. *Infinite Energy*, supra, 257 Ga. App. at 758 (1). Both at the hearing and in its order, the trial court correctly framed the issue — whether the commission's decision violated the "takings clause" of the Georgia or United States Constitution — and explicitly considered it at length, ultimately rejecting MXenergy's contention that a consti-

tutional violation occurred. "Because there is no evidence in the record affirmatively showing that the court applied the wrong standard of review, we will not presume error." (Citation and footnote omitted.) Id.

2. We next consider whether the application of the true up process to the shortfall caused by Catalyst's bankruptcy violated the takings clauses of the United States and Georgia Constitutions. We agree with the trial court that it did not.

As the superior court noted, the concept of taking private property for public use "has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals." (Citation and punctuation omitted.) *Louisville & Nashville R. Co. v. Mottley*, 219 U. S. 467, 484 (31 SC 265, 55 LE 297) (1911).

MXenergy argues that *Louisville & Nashville* does not apply here because it involved the cancellation of a private contract between two parties by subsequent statute, not the "forced appropriation of physical property by the government for its own purposes." But this description is inapposite. The commission did not forcibly appropriate MXenergy's property; MXenergy, as part of its voluntary participation in a regulatory scheme to which it had consented through its certification as a natural gas provider, nominated and delivered a specified amount of natural gas to the common system of Atlanta Gas Light. When another marketer later failed to fulfill its obligation to pay for the gas used by its customers, the regulatory scheme allocated the resulting costs among the remaining marketers in accordance with an established process. This is not a "forced appropriation," but exactly the consequential injury in the course of exercising lawful power contemplated by *Louisville & Nashville*, supra.

Such events as the Catalyst bankruptcy cannot be said to be unanticipated or unexpected. Marketers have from time to time entered and left the Georgia market. In 2001, another marketer filed for bankruptcy and failed to pay its true up charges. The Catalyst bankruptcy and its consequences were not unique and unanticipated, but rather a foreseeable occurrence for which the parties had designed and implemented a regulatory process. The true up process itself contemplates that marketers may leave the Georgia gas market; it is therefore foreseeable that a marketer would do so in a "short" position requiring an adjustment from the remaining marketers.

MXenergy contends that *Armstrong v. United States*, 364 U. S. 40, 48-49 (III) (80 SC 1563, 4 LE2d 1554) (1960), demonstrates that

the use of the true up process in this case amounted to an unconstitutional taking. But that decision is distinguishable on its facts. In *Armstrong*, the petitioners held state law materialmen's liens on boats being constructed for the United States Navy. When the prime contractor defaulted, the United States, pursuant to its contract, took title to the uncompleted boats and materials on hand and moved them out of state, thereby extinguishing the plaintiff's liens. Id. at 41. The United States Supreme Court held that this constituted a taking of the value of the lien rights, "of which loss the Government was the direct, positive beneficiary," rather than a mere "consequential" destruction of property.[4] Id. at 49 (III).

Here, in contrast, the commission took no direct action to take, appropriate, or extinguish any property right of MXenergy, and it obtained no property or benefit.[5] Instead, a well-established and legally tested regulatory process allocated the obligations of the "short" marketer, Catalyst, with respect to its customers who had used gas that was delivered by other marketers. See *Infinite Energy*, supra, 257 Ga. App. at 757. The process distributes those obligations among all "long" marketers, thus assuring the provision of gas to all customers using the Atlanta Gas Light distribution system. As the Georgia Supreme Court noted with reference to OCGA § 46-4-150 et seq. in *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 711 (1) (691 SE2d 203) (2010), "protecting natural gas consumers . . . is the most important factor to consider in any decisions to be made in accordance with this article." id., citing OCGA § 46-4-151 (a) (4). The ultimate beneficiaries of the regulatory scheme and the true up process are not the commission or the State of Georgia, but the customers.

In other words, after the true up process had operated as intended, and after the fact, MXenergy sought to obtain from the government amounts representing its commercial losses on gas delivered to Catalyst's customers. This is merely a "consequential" loss to MXenergy within the meaning of *Armstrong*, supra, and the "takings clause," whether state or federal, is inapplicable here. "This constitutional provision will apply only if property is taken or

---

[4] The Supreme Court observed in deciding *Armstrong*:
It is true that not every destruction or injury to property by governmental action has been held to be a "taking" in the constitutional sense. This case and many others reveal the difficulty of trying to draw the line between what destructions of property by lawful governmental actions are compensable "takings" and what destructions are "consequential" and therefore not compensable.
(Citations omitted.) Id. at 48 (III).

[5] Indeed, since the commission ultimately decided to provide some monetary relief to the affected marketers from the universal service fund, it did not receive any benefit, but rather paid out funds for the benefit of MXenergy and other marketers.

damaged. [Cits.]" *Lindsey v. Guhl*, 237 Ga. 567, 572 (II) (229 SE2d 354) (1976) (applying former Ga. Const. of 1945, Art. I, Sec. III, Par. I).

3. The commission elected not to follow the recommendation of its staff to deny any payment to the affected marketers on their petition. Instead, it decided to allocate amounts from the universal service fund maintained by the commission

> for the purpose of: (1) Assuring that gas is available for sale by marketers to firm retail customers within the territory certificated to each such marketer; (2) Enabling the electing distribution company to expand its facilities and service in the public interest . . . ; and (3) Assisting low-income residential consumers in times of emergency as determined by the commission, and consumers of the regulated provider of natural gas in accordance with Code Section 46-4-166.

OCGA § 46-4-161 (a). MXenergy contends that by providing these funds, the commission has conceded that the application of the true up process to the Catalyst bankruptcy was in fact a taking and that MXenergy is owed full compensation for the gas it contributed to the allocation. We disagree.

As noted above, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). And waiver, like notice, *Infinite Energy*, supra, 257 Ga. App. at 759 (1), is a question of fact. *Everts v. Century Supply Corp.*, 264 Ga. App. 218, 220-221 (590 SE2d 199) (2003) (summary judgment inappropriate where factual question of waiver presented).

Evidence was presented that, in the context of its duty to protect natural gas consumers, OCGA § 46-4-151 (a) (4), the commission intended to moderate the increase in costs resulting from Catalyst's inability to supply its customers, to encourage marketers to "be diligent" in addressing business risks, and to prevent the affected marketers from passing on to their customers all the costs of making up Catalyst's shortfall. From this, the superior court concluded that the decision to allocate a portion of the universal service fund to the Catalyst shortfall was "a regulatory business issue and a question of regulatory policy" that was supported by the evidence. Because some evidence supports that conclusion, MXenergy's argument in this regard is to no avail.

The superior court correctly affirmed the commission's decision to provide some discretionary compensation to MXenergy for its losses suffered as a result of the Catalyst bankruptcy, and did not err in concluding that the operation of the true up process did not

amount to a constitutional "taking" under either the Georgia or United States Constitutions. We therefore affirm the judgment of the superior court.

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

DECIDED JULY 7, 2011.

*Sutherland, Benjamin C. Morgan*, for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Senior Assistant Attorney General, Daniel S. Walsh, Assistant Attorney General*, for appellees.